**MONSANTO COMPANY, et al., Appellants,**

v.

**Mike DAVIS, et al., Appellees.**

Nos. 10–99–275–CV, 10–99–284–CV.

Court of Appeals of Texas, Waco.

July 26, 2000.

Elizabeth Bonvillain Kamin, Robert M. Corn, Woodard, Hall & Primm, P.C., Houston, W. Stephen Rodgers, Rodgers, Miller & McLain, P.C., Bryan, for appellant.

Joe Kenneth Longley, Philip K. Maxwell, Longley & Maxwell, L.L.P., Austin, Ron Butler, Marlin, Richard A. Shanks, Houston, Roy Barrett, Naman, Howell, Smith & Lee, P.C., Waco, for Appellees.

Before Chief Justice DAVIS Justice VANCE, and Justice GRAY.

## O P I N I O N

BILL VANCE, Justice.

This opinion addresses two interlocutory appeals arising out of one trial court case.

Cause Number 10–99–275–CV is an appeal from an order certifying a class action. During the hearing on Plaintiffs' motion to certify a class, the trial court refused to consider the majority of the material offered by Defendants, excluding the documents on the basis that they were not admissible or were not disclosed to Plaintiffs during discovery. Among the items excluded were documents from a Louisiana national class action involving the same product and transactions as those the subject of this suit, including documents which reflected the "opt-outs" from that class, the settlement agreement, and the final judgment resolving the class members' claims. We conclude that (a) the court erred in excluding the proffered material because the rules governing evidence and discovery practice do not strictly apply in a class certification hearing and (b) the error was harmful in that, although the excluded materials may demonstrate that the class certification here is improper, the court's ruling prevented Defendants from presenting that argument to us. Thus, we will reverse the court's certification order and remand for further proceedings.

Cause Number 10–99–284–CV is an appeal from an injunction prohibiting Defendants from contacting the absent class members and from taking any action to enforce the Louisiana class settlement against those members during the pendency of this action. We conclude that the injunction must be set aside because the order imposing it fails to specify the reasons that it was issued as required by Rule 683 of the Texas Rules of Civil Procedure.

## BACKGROUND

This is the second time that a dispute between these Plaintiffs—a group of Texas cotton farmers—and these Defendants—manufacturers and distributors of high-tech cotton seed—arising out of the underlying litigation has reached us. In the first, we considered a petition for a writ of mandamus brought by Monsanto Compa-

ny, Delta Land and Pine Co., and D & M Partnership (Defendants[1]) to avoid the production of certain documents for which they claimed a privilege. *In re Monsanto*, 998 S.W.2d 917 (Tex.App.—Waco 1999, orig. proceeding). Like the mandamus, these proceedings are brought to us before a trial on the merits has occurred. These appeals, however, require a fuller understanding of the controversy that produced the underlying litigation.

### The root of the matter

This lawsuit has its seeds in the 1996 cotton planting season in Texas. In the fall of 1995, Monsanto Company announced that it had developed a cotton plant which was genetically engineered to produce an insect-fighting protein. The gene technology which produced this attribute was patented by Monsanto and marketed under the name Bollgard. According to Monsanto's promotional material, a cotton plant with the Bollgard gene would have the ability to control common, and very destructive, pests such as the tobacco budworm, the cotton bollworm, and the pink bollworm.

A farmer was charged two separate charges for the use of the Bollgard cotton seed—the purchase price for the seed and a per-acre-planted "technology licensing fee." Most of the farmers who purchased the seed placed their technology licensing fee on an open account maintained by their local retailer. The retailer was responsible for passing the licensing fee on to Monsanto once the farmer had paid the amount then due.

### Litigation sprouts

Plaintiffs, Texas cotton farmers who purchased and planted the Bollgard seed in 1996, did not believe that the Bollgard cotton performed as Monsanto represented it would. In August 1996, they filed this suit, alleging that Defendants conspired to commit and were guilty of committing acts that amounted to fraud, violations of the Texas Deceptive Trade Practices Act, negligence, and negligent misrepresentations.

Plaintiffs were not the only ones dissatisfied with the performance of the Bollgard seed. In October 1996, other plaintiffs filed a suit in Louisiana state court, styled *Ren–Dan Farms, et al. v. Monsanto Company, et al.*,[2] seeking recovery for similar claims relating to the use of Bollgard seed during the 1996 cotton growing season. The Texas suit and the Louisiana suit each included a request for certification as a class action.

Apparently, many of the farmers who used the Bollgard seed in 1996 failed to pay the fees which were due under the technology licensing agreements. In response, Monsanto sent form letters to 108 Texas farmers in November and December 1996 advising them that their accounts were overdue and requesting payment. Both form letters also contained a sentence which stated that "[a]ll accounts not paid as of September 1, 1996 are assessed a finance charge of 14% per annum." Based on these form letters and individual follow up letters, Plaintiffs added a usury count to their petition in August 1997, asserting that in the absence of an agreement to pay interest, the claim that Monsanto was entitled to collect a 14% finance charge constituted usury under Texas law. Plaintiffs again asked for class-action status for their usury claims, although they did not immediately pursue a class certification order. In November 1997, Monsanto sent out a "corrective action letter" to 100 of the farmers from whom they had not received complaints regarding the finance charge, withdrawing that charge.

---

1. The record is unclear as to what role each defendant played in the events leading up to this suit. Therefore, we will refer generally to "Defendants" unless the record shows specifically that one or the other of Defendants took a certain action.

2. *Ren–Dan Farms, et al. v. Monsanto Company, et al.*, Docket No. 68466 (10th Judicial District Court, Natchitoches Parish, Louisiana).

*Ren–Dan Farms,* on the other hand, moved to settlement. On May 26, 1998, the parties to that suit presented the Louisiana court with a Joint Stipulation, which outlined the terms and conditions for certification of a proposed settlement class. On the same day, the court tentatively certified the suit as a national class action and approved the form of the notice to be given to the absent class members. Six and one-half weeks later, on July 10, 1998, the parties presented the *Louisiana court* with an executed settlement agreement and the court rendered a final judgment, expressly holding that the class settlement "is to be all-inclusive, and to extinguish all claims that the members of the class may have arising out of the purchase and use of Bollgard® cotton in the 1996 planting season, consistent with the terms expressed in the Settlement Agreement."

### A second class blossoms

In July 1999, Plaintiffs requested that the court sever their usury claims and certify that severed suit as a class action. After granting the severance, the court set a hearing on Plaintiffs' motion to certify on September 2, 1999. On the day of the hearing, both sides filed briefs in support of their positions. Defendants attached twenty-four exhibits to their brief in opposition to Plaintiffs' request for certification of the class, including a certified copy of the *Ren–Dan Farms'* settlement agreement and final judgment and copies of the *Ren–Dan Farms'* class notice and opt-out lists.

At the hearing, three Plaintiffs and one of their attorneys testified. In summary, Plaintiffs generally testified that they had purchased Bollgard cotton seed from Monsanto, that they did not agree to pay interest to Monsanto for overdue technology licensing fees, and that Monsanto had assessed a 14% finance charge on their outstanding debt. Plaintiffs also tendered twenty-five documents in support of their request for class status, including letters sent by Monsanto to the growers, internal Monsanto e-mail correspondence, a sum-mary of other documents produced by Plaintiffs' counsel, and a letter from Defendants' counsel providing information to Plaintiffs' counsel in anticipation of settlement negotiations. Through these documents, Plaintiffs sought to establish that there were 108 Texas farmers in the usury class.

Defendants attempted to counter Plaintiffs' showing by cross-examination and documents. Through cross-examination, Defendants established that all three Plaintiffs had opted-out of the *Ren–Dan Farms* class individually but had not taken any steps to explicitly opt-out the class of Texas farmers they aspired to represent. Defendants relied primarily on the documents which were attached to their brief in opposition to class certification. However, Plaintiffs objected when Defendants tried to introduce those documents into evidence. Specifically, Plaintiffs argued that an affidavit from the *Ren–Dan Farms* tabulation agent (and the attached copy of the class notice and list of the farmers who opted out of the *Ren–Dan Farms* class) and certified copies of the *Ren–Dan Farms* settlement agreement and final judgment should not be considered by the court because Defendants had not provided Plaintiffs with copies of the documents during discovery. The court agreed and refused to consider these items. Plaintiffs further asked that the court not consider the copies of the documents attached to Defendants' pre-hearing brief. In response, the court indicated that it "did not consider it because it was excluded even though it was attached to the Memorandum." At the conclusion of the hearing, Defendants made an offer of proof of the excluded items.

As part of their argument against certification, Defendants asserted that the named Plaintiffs would be antagonistic to the interests of the absent class members because:

Here, what you will find is that because of the *Ren–Dan* settlement and the indemnities that are present in that settle-

ment, that the other people in the class could become liable on their indemnities as a result of the actions taken by the named Plaintiffs in this suit. The interests of the parties are exactly antagonistic and exactly in conflict. What these people are trying to do in this case is basically set aside the settlement in the *Ren–Dan* case. The people in the *Ren–Dan* class who settled and who received consideration are now going to have someone out there who is trying to set aside the .agreement by which they benefitted. That will trigger their indemnification obligations, and that is adverse.

Plaintiffs interpreted this argument as a threat by Defendants to initiate proceedings against the absent class members to enforce any indemnification rights Defendants had under the *Ren–Dan Farms* settlement. Plaintiffs asked the court to enjoin Defendants from contacting members of the class and from "going back to Louisiana and trying to somehow interfere with the proceedings in this case."

At the end of the hearing, the court announced that it would grant Plaintiffs' request for class certification and signed an order describing the class as "all persons living in Texas that were charged 14% interest by Monsanto Company, Delta and Pine Land Company, and/or D & M Partnership relating to a technology fee involved in the purchase of Bt cotton seed for the 1996 growing season[.]" This order is the subject of the appeal in Cause Number 10–99–275–CV.

At the end of the certification hearing, the court also granted Plaintiffs' oral request for an order prohibiting Defendants from contacting the absent class members and from taking any action in another forum. The court later held a hearing on Plaintiffs' request to convert the oral order into a temporary injunction. At the conclusion of the hearing, the court signed a temporary injunction ordering Defendants to refrain from (1) communicating with any of the class except through the class attorneys and (2) taking any action that would adversely affect the rights of the class, including any action to enforce the Louisiana settlement against the members of the class, other than actions taken in this proceeding. This order is the subject of the appeal in Cause Number 10–99–284–CV.

## CLASS CERTIFICATION APPEAL

In this Court, Defendants attack the certification order on several fronts. On one hand, they contend that the court erred in certifying the class because none of the absent class members have a claim as a result of the *Ren–Dan Farms* settlement or as a result of the "corrective action letters" sent out by Monsanto in November 1997. Alternatively, Defendants claim that the *Ren–Dan Farms* settlement prevented the court from finding that any of the elements of Rule 42 were satisfied. In a separate attack on one of the Rule 42 elements, the adequacy of Plaintiffs as class representatives, Defendants contend that Plaintiffs' twenty-four month delay between asserting the usury claim and seeking certification of the class demonstrates that they are not adequate representatives. Finally, Defendants argue that the court reversibly erred when it refused to consider all of the exhibits that they tendered during the certification hearing.

### Analysis

■ Judicial efficiency requires us to first rule upon the complaints brought by Defendants which would entitle them to the greatest relief. *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex.1999); *see also* Tex.R.App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). Thus, if Defendants have shown that the trial court erred in certifying the class for a reason that would preclude certification on remand, they are entitled to an opinion recognizing that bar. If on the other hand, Defendants are unable to

show a basis for barring re-certification, but are able to establish multiple reasons for a reversal of the order, we can chose from among those reasons without impinging upon judicial efficiency or Defendants' rights to full appellate review.

Thus, we must first address the issues raised by Defendants which would have the effect of barring reconsideration of the class certification issue by the court on a remand from this court. We start, then, with Defendants' attacks on the merits of the class certification order. After considering, and rejecting, each of Defendants' complaints directed at the merits of the certification order (without considering the excluded materials), we will turn to the issue of the court's refusal to consider material presented by Defendants at the certification hearing.

### The merits of the certification order

Before considering the merits of Defendants' attacks on the certification order, we must first determine how and what we should review. As we will show, the scope of review is determinative of Defendants' attack on the merits of the certification order.

### Standard and scope of review

■ A trial court enjoys broad discretion in making the decision to certify a class. *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.). We review the court's certification decision for an abuse of discretion. *General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 955 (Tex. 1996); *Sun Coast Resources, Inc. v. Cooper,* 967 S.W.2d 525, 529 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.). A trial court abuses its discretion when ruling on class certification if it (1) does not properly apply the law to the undisputed facts, (2) acts arbitrarily or unreasonably, or (3) rules upon factual assertions not supported by the record. *Spera v. Fleming, Hovenkamp & Grayson,* 4 S.W.3d 805, 810 (Tex.App.—Houston [14th Dist.] 1999,

no pet.); *Sun Coast Resources,* 967 S.W.2d at 529.

■ When reviewing the merits of the court's decision, we are limited to considering the material that was before the court at the time that it ruled. *Methodist Hospitals of Dallas v. Tall,* 972 S.W.2d 894, 898 (Tex.App.—Corpus Christi 1998, no pet.). As a general rule, documents not admitted into evidence are not considered by an appellate court. *See Reyes v. Reyes,* 946 S.W.2d 627, 630 (Tex.App.—Waco 1997, no writ); *Vanscot Concrete Co. v. Bailey,* 862 S.W.2d 781, 783 (Tex.App.—Fort Worth 1993), *aff'd,* 894 S.W.2d 757 (Tex.1995).

### Class certification standards under Rule 42

■ There is no right to bring a lawsuit as a class action. *Sun Coast Resources,* 967 S.W.2d at 529. Rather, to achieve class status, the proponent of the claim must satisfy all four criteria of Rule 42(a) and at least one of the conditions in Rule 42(b). TEX.R. CIV. P. 42(a), (b); *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425, 433–34 (Tex.2000); *Sun Coast Resources,* 967 S.W.2d at 529.

■ Rule 42(a) requires the putative class representative to show:

(1) numerosity—the class is so numerous that joinder of all members is impracticable. *Rainbow Group, Ltd. v. Johnson,* 990 S.W.2d 351, 356 (Tex. App.—Austin 1999, pet. dism'd w.o.j.). Numerosity is not based on numbers alone, but includes such factors as judicial economy, the nature of the action, geographical location of class members, and the likelihood that class members would be unable to prosecute individual lawsuits. *Id.* at 357;

(2) commonality—there are questions of law or fact common to the class. *Id.* Commonality requires that *some,* not necessarily all or even a substantial portion, of the legal or factual questions be common to the class. *Id.* at 358. The issues must be such that when they are

answered for one member of the class, they are resolved for all members of the class. *Sun Coast Resources,* 967 S.W.2d at 532. Even one common question could be sufficient to support a class action. *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 611 (Tex.App.—Texarkana 1995, writ dism'd);

(3) typicality—the claims or defenses of class representatives are typical of the claims or defenses of the class. *Rainbow Group,* 990 S.W.2d at 356. To be typical of the class, the named plaintiffs must possess the same interest and suffer the same injury as the rest of the class. *Weatherly,* 905 S.W.2d at 653. Their claims must arise from the same event or course of conduct giving rise to the claims of the other class members and must be based on the same legal theory. *Id.*

(4) adequacy of representation—the class representatives will fairly and adequately protect the interests of the class. *Rainbow Group,* 990 S.W.2d at 356. There are two elements which are considered for determining if the named plaintiffs are adequate representatives of a class: (1) it must appear that the named plaintiffs will vigorously prosecute the class claims through their attorneys, and (2) there must be an absence of antagonism or conflict between the named plaintiffs' interests and the interests of the absent class members. *Sun Coast Resources,* 967 S.W.2d at 538.

 Although there are five possible ways of satisfying Rule 42(b), Plaintiffs relied in the trial court, and again before us, on only two of those provisions. First, Plaintiffs contended that the class is proper because Rule 42(b)(1)(A) has been satisfied. Tex.R. Civ. P. 42(b)(1)(A). Under that part of the Rule, a class action may be maintained if, in addition to the elements of Rule 42(a), the proponent shows that prosecution of separate actions by individual class members would create a risk of inconsistent adjudications. *Id.; Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836,

845 (Tex.App.—Houston [14th Dist.] 1996, no writ), *overruled on other grounds, Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425, 434–35 (Tex.2000); *see also FirstCollect, Inc. v. Armstrong,* 976 S.W.2d 294, 302–03 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.).

 Plaintiffs also claimed that the class is appropriate under Rule 42(b)(4). Tex.R. Civ. P. 42(b)(4). This portion of the Rule is satisfied if the class representative shows that the factual or legal issues common to the class predominate over issues affecting only individual members, a criterion referred to as "predominance," and that the class action is a superior method to fairly and efficiently adjudicate the controversy compared to other available methods, a criterion referred to as "superiority." *Id.; Bernal,* 434–35; *Rainbow Group,* 990 S.W.2d at 356. The court did not indicate on which of these provisions it was relying in its certification order; thus, to affirm we must find only that the court's decision was correct under one of them because certification may be appropriate under more than one section of Rule 42(b). *TCI Cablevision of Dallas, Inc. v. Owens,* 8 S.W.3d 837, 847 (Tex.App.—Beaumont 2000, pet. filed).

### *Global effects of the* Ren–Dan Farms *class settlement*

 Defendants make two global attacks on the certification order on the basis of the *Ren–Dan Farms* settlement. First, Defendants contend that the claims asserted on behalf of the absent class members were resolved by the *Ren–Dan Farms* settlement and are, therefore, barred from being asserted in this action by the doctrines of res judicata and release. Secondly, Defendants assert that Plaintiffs have no standing to prosecute this action as class representatives because none of the other class members' claims against Defendants survived the *Ren–Dan Farms* settlement. Both of these theories explicitly depend on a showing that the absent class members' claims were settled

in *Ren–Dan Farms,* a showing which can only be made with reference to the *Ren–Dan Farms* class notice, class members list, opt-out list, settlement agreement, and final judgment. Because the trial court refused to consider these items we cannot consider them. *Tall,* 972 S.W.2d at 898. Thus, we cannot find that the court abused its discretion on the basis of either of these contentions. *Id.* Additionally, because we cannot consider the excluded materials, we cannot say at this point that the court would be barred from re-certifying the class on the basis of either of these arguments.

### Satisfaction of the elements of Texas Rule of Civil Procedure 42(a)

■ Defendants specifically complain about the court's decision on each of the requirements under Rule 42(a). However, Defendants rely heavily on materials that the court refused to consider, including the *Ren–Dan Farms* settlement documents and examples of the licensing agreement and fee schedule, as the basis for their attack on the court's implied finding that the numerosity, commonality,[3] typicality, and the second factor of the adequacy of representation—lack of antagonism with the interest of the class—requirements were met. Again, because the trial court refused to consider the documents, we may not consider them. *Id.* Thus, we cannot find that the court abused its discretion on the basis of these contentions. *Id.* Additionally, because we cannot consider the excluded materials, we cannot say at this point that the court would be barred from re-certifying the class on the basis of these arguments.

### Does delay demonstrate inadequacy of representation?

■ As an independent attack specifically directed at the court's implied finding

that Plaintiffs are adequate representatives for the class, Defendants claim the length of time between the filing of the usury claims and the effort to obtain class certification shows Plaintiffs will not diligently prosecute the class claims. *See* Tex.R. Civ. P. 42(c)(1) (indicating that the decision on class action status should be made "as soon as practicable after commencement of an action brought as a class action"); *Life Ins. Co. of Southwest v. Brister,* 722 S.W.2d 764, 770 (Tex.App.—Fort Worth 1986, no writ), *overruled on other grounds, Southwestern Refining Co. v. Bernal,* 22 S.W.3d at 434–35 (Tex.2000); *McCarthy v. Kleindienst,* 741 F.2d 1406, 1411–12 (D.C.Cir.1984). Defendants argue that the "unexplained and unexcused" passage of time establishes that Plaintiffs are inadequate class representatives.

As Defendants observe, there is no explanation in the record of the cause of the length of time between the filing of the usury claim and the hearing on Plaintiffs' request for class action status. Essentially, then, Defendants ask us to decide that the passage of twenty-four months between filing the claim and the certification hearing is an unreasonable delay as a matter of law. This we will not do. *See Angeles/Quinoco Securities Corp. v. Collison,* 841 S.W.2d 511, 514–15 & n. 2 (Tex. App.—Houston [14th Dist.] 1992, no writ) (holding that five year delay was not unreasonable as a matter of law and citing cases in which delays of up to six years did not preclude certification). In the absence of a showing of the reason, or the lack thereof, for the delay we cannot find that the court abused its discretion by failing to find the delay established that Plaintiffs were inadequate representatives. *See id.*

### Satisfaction of Rule 42(b) requirements

■ In their final attack on Plaintiffs' efforts to establish the elements of Rule

---

**3.** Defendants combined their arguments about the Rule 42(a) commonality requirements and the Rule 42(b)(4) predominance requirement in their brief. The majority of their complaints in this section relate to the

predominance issue. Because we conclude that Defendants failed to challenge the Rule 42(b)(1)(A) element of certification, we will not consider their predominance arguments.

42, Defendants argue that the common issues do not predominate in the litigation so as to meet the requirements of Rule 42(b)(4). Tex.R. Civ. P. 42(b)(4). However, Plaintiffs moved for certification under both Rule 42(b)(1)(A) (risk of inconsistent adjudications) and 42(b)(4) (predominance and superiority). *Id.* 42(b)(1)(A), 42(b)(4). As we have noted, certification may be appropriate under more than one section of Rule 42(b). *Cablevision of Dallas,* 8 S.W.3d at 847. Thus, to prevail, Defendants must show that certification under both Rule 42(b)(1)(A) and 42(b)(4) was inappropriate. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Malone v. E.I. du Pont de Nemours & Co.,* 8 S.W.3d 710, 716–17 (Tex.App.—Fort Worth 1999, pet. filed). Defendants do not complain about the implied finding by the court that the class was properly certified under Rule 42(b)(1)(A). Therefore, we cannot find that the trial court abused its discretion in finding at least one of the requirements of Rule 42(b) were met by Plaintiffs. *See id.; Cablevision of Dallas,* 8 S.W.3d at 847.

### *"Corrective Action Letters" defense*

■ Finally, Defendants contend that the court erred in certifying the class because Monsanto sent "corrective action letters" to all of the class members except Plaintiffs in November 1997. Thus, Defendants contend, all of the absent class members claims are barred. *See* Tex. Fin.Code Ann. § 305.103(a) (Vernon Supp.2000).[4] Although Defendants showed that Monsanto had sent corrective action letters to 100 of the absent class members, Plaintiffs showed that those letters were sent out well after the usury allegations were raised on behalf of the proposed class in this case. Thus, if the effectiveness of the corrective action letters is determined against Defendants, the question of usury will then apply to all potential class members. Therefore, Defendants cannot rely upon this potential defense to show that the trial court erred in certifying the class or to establish before us that the trial court cannot re-certify the class on remand.

### *The trial court's exclusion of Defendants' "material"*

■ In their last attack on the certification order, Defendants complain that the court refused to consider much of the material they proffered during the course of the certification hearing. As set out above, the court refused to consider the *Ren–Dan Farms'* class notice, the list of the Texas farmers who opted out of the class, the settlement agreement, and the final judgment because Defendants had failed to provide Plaintiffs with copies of these documents during discovery. Other exhibits were excluded on the basis of Plaintiffs' hearsay objections.

■ "In the area of class certification, cases can be found to support practically any point of view." *Weatherly,* 905 S.W.2d at 648. However, there are a few class-action principles which have obtained near universal acceptance in the case law. One of those principles is that the material on which a trial court bases its certification ruling need not be admissible evidence. *E.g., Texas Commerce Bank v. Wood,* 994 S.W.2d 796, 801 (Tex.App.—Corpus Christi 1999, pet. dism'd w.o.j.); *St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc.,* 929 S.W.2d 25, 30 (Tex.App.—Texarkana 1996, no writ); *Health & Tennis Corp. of America v. Jackson,* 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.), *overruled on other grounds, Southwestern Refining Co. v. Bernal,* 22 S.W.3d at 434–35 (Tex.2000). Thus, "formal evidence is not required for a [certification] determination in the sense of tendering evidence in a form meeting the requirements of the Rules of Civil Evidence." *St. Louis Southwestern Ry. Co.,* 929 S.W.2d at 30. Parties can rely on "affidavits or other forms

---

4. Defendants are able to present this theory on its merits because the court admitted all of the documents on which they base this argument.

of proof" in a class certification hearing. *Id.* at 31.[5]

The court refused to consider most of Defendants' material on the basis of Plaintiffs' claims that the documents had not been produced during discovery. Plaintiffs now justify that exclusion by relying on the interpretation of former Texas Rule of Civil Procedure 215(5) in *Alvarado v. Farah Mfg.*: "The rule is mandatory and its sole sanction—exclusion of evidence—is automatic." Tex.R. Civ. P. 215(5), 50 Tex. B.J. 863 (1987, amended 1998); *Alvarado v. Farah Mfg.*, 830 S.W.2d 911, 914 (Tex. 1992). The applicable rule now is Rule 193.6, which provides:

193.6 Failing to Timely Respond—Effect on Trial.

(a) Exclusion of Evidence and Exceptions. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

(b) Burden of Establishing Exception. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness.

A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

(c) Continuance. Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

Tex.R. Civ. P. 193.6.

■■■ Application of this rule to this class certification hearing is inappropriate. The rule specifically addresses the "Effect on Trial" of a failure to respond to discovery. *Id.* The sanction is the prohibition of the introduction of the undisclosed material into *evidence.* Thus, this rule is not applicable to a certification hearing. *See St. Louis Southwestern Ry. Co.,* 929 S.W.2d at 30–31.

■■■ "[D]ue process under the federal and state constitutions requires that defendants to a class action receive notice before a class-certification hearing and have an opportunity to be heard on the question of certification." *In re M.M.O.,* 981 S.W.2d 72, 80 (Tex.App.—San Antonio 1998, no pet.). Fundamental fairness dictates that a party not be arbitrarily deprived of the right to offer its evidence. *Striedel v. Striedel,* 15 S.W.3d 163, 166 (Tex.App.—Corpus Christi 2000, no pet. h.). Because there was no legal basis for the court to refuse to consider Defendants' evidence, Defendants were arbitrarily denied the opportunity to present their case.

---

**5.** The Corpus Christi Court of Appeals has gone further than any other Texas court in expanding this principle, holding that "application of ordinary evidentiary standards and rules of evidence to a certification hearing is inappropriate" and that "the rules of evidence [are] inapposite to a certification hearing." *Rio Grande Valley Gas Co. v. City of Pharr,* 962 S.W.2d 631, 648 & n. 11 (Tex.App.—Corpus Christi 1997, pet. dism'd w.o.j.). We do not believe that the concept can be carried this far. Although the rules of evidence are relaxed in the class certification hearing context, they are not completely discarded. Thus, provisions such as those governing relevance, privileges, and the control of the examination of witnesses contained in the rules are available to the trial court for managing the hearing and the presentation of the material on which the parties wish to rely in supporting their position on the certification issue.

This amounts to an abuse of the court's discretion.

### Conclusion

An error in the exclusion of evidence will result in a reversal only if it either probably caused the rendition of an improper judgment or probably prevented the appellant from presenting the case to the court of appeals. Tex.R.App. P. 44.1(a). We conclude that the error here requires reversal because it plainly prevented Defendants from presenting their case to us. As set out above, we have been unable to consider the central arguments which Defendants have made on the merits of the order certifying the class because the court refused to consider the materials tendered by Defendants. Thus, we conclude that the certification order should be reversed and this cause remanded for further proceedings consistent with this opinion.

### TEMPORARY INJUNCTION ORDER APPEAL

Defendants attack the temporary injunction order on four bases. First, Defendants complain that under the full faith and credit clause of the United States Constitution, the court "should have respected and given res judicata effect to, rather than enjoined enforcement of, the final judgment" in *Ren–Dan Farms*. Next, Defendants contend there is no evidence supporting a finding that Plaintiffs established a probable right of recovery or a probable injury, as required for a temporary injunction. Third, Defendants argue that no "clear equity" or "compelling circumstance" exists that would justify the issuance of an anti-suit injunction. Finally, Defendants charge that the form of the injunction order is improper because it does not specify the reasons it was imposed as required by the rules.

We construe the first and third complaints as raising questions of law which would prevent the re-issuance of this injunction if either one is correct. Thus, we will address both of these arguments.

*Bradleys' Elec.*, 995 S.W.2d at 677; *see also* Tex.R.App. P. 47.1. The second and fourth contentions would only have the effect of showing error in this particular order, but would not prohibit the imposition of a second temporary injunction by the court on remand after appropriate notice and hearing. Thus, we need not address both claims if one is valid. *Id.*

### Applicable standards

As a general rule, to obtain a temporary injunction, a movant is required to show a probable right to the relief sought on the merits of the suit and a probable injury in the interim. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993). The movant is not required to show he would prevail on final trial to show a probable right to relief, but rather is required to allege a cause of action and offer evidence that tends to support the right to recover on the merits. *Walling*, 863 S.W.2d at 58. We review the trial court's decision for an abuse of discretion. *Walling*, 863 S.W.2d at 58.

Here the trial court issued two types of injunctions—(1) a prohibition on communication with the class members and (2) an anti-suit injunction that prohibits Defendants from proceeding in an action filed in a sister state. Courts have recognized that contacts with absent class members by the opposing party present inherent dangers to the efficacy of the class action procedure. *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir.1985); *Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D.Tex.1997); *Hampton Hardware, Inc. v. Cotter & Company, Inc.*, 156 F.R.D. 630, 633–34 (N.D.Tex.1994). Under the Federal Rules of Civil Procedure, trial courts are authorized to issue carefully drawn orders prohibiting or limiting such contact. Fed.R.Civ.P. 23(d); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02, 101 S.Ct. 2193, 2200–01, 68 L.Ed.2d 693 (1981). This specific provision was not included in the Texas Rules of Civil Procedure when

our state incorporated the Federal class action rule into our rules. *St. Louis Southwestern Ry. Co.*, 929 S.W.2d at 33. However, the trial court has the authority to regulate this contact if Plaintiffs made the showing required to support a temporary injunction by virtue of its expanded authority in the context of a class action. *See Bloyed,* 916 S.W.2d at 954 (acknowledging trial court's role as "guardian of the class interest").

■ The second provision in the trial court's order is properly characterized as an anti-suit injunction. Texas courts have the authority to prohibit a party from continuing litigation in a sister state. *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996): *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex.1986). However, that power is to be exercised "sparingly, and only in very special circumstances." *Id.* An anti-suit injunction may be issued in four instances where "a clear equity demands" the injunction: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *Golden Rule,* 925 S.W.2d at 651.

### Authority to issue anti-suit injunction

■ Defendants first argue that the trial court was wrong to issue the anti-suit injunction because the *Ren–Dan Farms* final judgment was entitled to be given preclusive effect under the doctrine of res judicata.[6] Because the *Ren–Dan Farms* final judgment was rendered by a Louisiana state court, Louisiana law governs its res judicata effect. *Villanueva v. Office of the Atty. Gen.,* 935 S.W.2d 953, 956 (Tex. App.—San Antonio 1996, writ denied). Defendants assert that under Louisiana law, a valid and final judgment is conclusive between the same parties as to all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation. *See* LA.REV.STAT. ANN. § 4231 (West 1991); *Spear v. Prudential Property and Casualty Ins. Co.,* 727 So.2d 640, 642 (La.Ct.App.1999).

■ Although Louisiana substantive law controls the res judicata effect of the *Ren–Dan Farms* judgment, Texas procedural rules control how that effect is determined. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.1998). Under Texas procedure, the party claiming the benefit of res judicata has the burden of establishing the facts necessary to prevail on the defense. *Bell v. Moores,* 832 S.W.2d 749, 754 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Thus, Defendants had the burden of showing that the *Ren–Dan Farms* final judgment involved the same parties as the claims before the court. *Id.; See also* LA.REV.STAT. ANN. § 4231; *Spear,* 727 So.2d at 642.

The documents admitted into evidence during the injunction hearing established that the Louisiana class action was an opt-out class. However, Defendants presented no evidence during the injunction hearing which would tend to show that the absent class members in this suit were members of the class action resolved in the *Ren–Dan Farms* litigation. Therefore, Defendants have failed to show that the *Ren–Dan Farms* final judgment involved the same parties as are before the court, and have failed to establish an abuse of discretion by the court when it refused to give that judgment preclusive effect on the anti-suit injunction issue.

### "Clear equity" or "compelling circumstance"

■ Defendants attack both the no-communication injunction and the anti-suit injunction on the basis that Plaintiffs did not establish a "clear equity" or "compel-

---

6. The *Ren–Dan Farms* settlement notice, the Joint Stipulation, the Settlement Agreement, and the Final Judgment were included in the documents that the Court admitted into evidence at the injunction hearing.

ling circumstance" to justify the order. Although only necessary to support the anti-suit injunction, both provisions serve to prevent the evasion of an important public interest—the integrity of the class action procedure in the present case. Class actions play an important role in our legal system. *See Ford Motor Co. v. Sheldon*, 22 S.W.3d at 452 (Tex.2000); *Bloyed*, 916 S.W.2d at 952–53 (recognizing important functions of class action procedure, including that it promotes efficiency, protects defendants from inconsistent verdicts, protects rights of absent class members, allows recovery by small claimants, and provides a mechanism for enforcing laws through private attorney general suits). Contact with the absent class members by the defendant creates a real danger of destroying the efficiency of the class procedure. *Kleiner*, 751 F.2d at 1202; *Burrell*, 176 F.R.D. at 243; *Hampton Hardware*, 156 F.R.D. at 633–34. The anti-suit injunction serves the same purpose by preventing Defendants from communicating with the absent class members via another legal proceeding. Thus, we conclude that the court could have found the no-communication injunction and the anti-suit injunction were necessary to prevent the evasion of an important public policy. Preventing the evasion of the important public policies furthered by the class action procedure is a compelling circumstance justifying the issuance of the temporary injunction by the trial court. *Golden Rule*, 925 S.W.2d at 651.

### Form of the injunction order

■■■ Defendants have two remaining attacks on the injunction order. Under either one, the most relief that Defendants are entitled to is a reversal of the order and a remand for further proceedings. Therefore, we address the narrower of the two grounds: Defendants' complaint that the trial court's order failed to specify the basis for finding the injunction requirements had been met as required by Rule 683. Tex.R. Civ. P. 683.[7]

■■■ Rule 683 provides, in part:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained[.]

*Id.* The requirements are mandatory and must be strictly followed. *InterFirst Bank San Felipe, N.A. v. Paz Const. Co.*, 715 S.W.2d 640, 641 (Tex.1986); *Big D Properties, Inc. v. Foster*, 2 S.W.3d 21, 22–23 (Tex.App.—Fort Worth 1999, no pet.). If the order fails to comply with these requirements, it is void and should be dissolved. *Id.*

The injunction order issued by the court states:

On the 16th day of September, 1999, came on to be heard in the above-entitled and numbered cause ... the Application of the Plaintiffs to have the temporary restraining order heretofore granted by this Court on the 2nd day of September, 1999, made, after hearing, into a temporary injunction, and Plaintiffs and Defendants both appeared by and through their respective counsel and it appearing to the Court that under the law and facts pled in Plaintiffs' Applica-

---

7. In their other complaint, Defendants contend that Plaintiffs failed to adduce evidence establishing a probable right of recovery and a probable injury in the interim. There is a disagreement in the case law as to whether an applicant must show these two elements to justify an anti-suit injunction. *Compare Golden Rule Ins. Co. v. Harper*, 905 S.W.2d 804, 809 (Tex.App.—Houston [14th Dist.] 1995), *rev'd on other grounds*, 925 S.W.2d 649 (Tex. 1996), *and Admiral Ins. Co. v. Atchison, Topeka and Santa Fe Ry. Co.*, 848 S.W.2d 251, 257–58 (Tex.App.—Fort Worth 1993, writ denied), *overruled on other grounds, Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996), *with Total Minatome Corp. v. Santa Fe Minerals, Inc.*, 851 S.W.2d 336, 339 (Tex. App.—Dallas 1993, no writ). Resolution, of this question is unnecessary here, given that we set aside the injunction on the alternative basis of Defendants last complaint.

tion for Temporary Restraining Order and Temporary Injunction, and based upon the evidence presented at the temporary injunction hearing held in this cause, that the Plaintiffs have a probable right to a writ of temporary injunction issued against the Defendants, and that the Plaintiffs will suffer probable injury in the event that such writ of temporary injunction is not issued; and it further appears to the Court that there is no adequate remedy at law and that therefore, based upon the foregoing findings, it is therefore

ORDERED, ADJUDGED AND DE-CREED by this Court that the Clerk of this Court shall issue a writ of temporary injunction against the following named with the following force and effect:

> [setting out the terms of the injunction as described above]

This order fails to comply with the mandatory requirement of Rule 683 that it provide a "detailed explanation of the reason for the injunction's issuance[.]" *Adust Video v. Nueces County*, 996 S.W.2d 245, 249 (Tex.App.—Corpus Christi 1999, no pet.). Therefore, the order is void, and the temporary injunction must be set aside. *InterFirst Bank*, 715 S.W.2d at 641; *Big D Properties*, 2 S.W.3d at 22–23.

### SUMMARY

Although we do not find that the trial court abused its discretion by certifying the class on the basis of the materials it considered, we conclude that it abused its discretion by refusing to consider the materials Defendants proffered during the certification hearing. Furthermore, we conclude that the trial court's order imposing a temporary injunction is void because the court failed to specify its reasons for issuing the injunction. We have examined all of the complaints Defendants raised that would have the effect of preventing re-certification of a class or the re-imposition of the temporary injunction on remand of this proceeding, but found no basis on the record before the trial court for finding either action is barred. Thus, we are not in a position to render judgment.[8]

Therefore, the order certifying this suit as a class action is reversed. The temporary injunction issued by the trial court on September 17, 1999, is dissolved. Each cause is remanded to the trial court for further proceedings consistent with this opinion.

---

8. We are not holding that we could never consider *improperly excluded evidence* when determining the proper disposition of an appeal. Both Texas and Federal case law recognize that circumstances exist where an appellate court should exclude *improperly admitted evidence* from consideration when reviewing the sufficiency of the proof to support the judgment. *See, e.g., Weisgram v. Marley Co.*, 528 U.S. 440, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000); *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997). Normally, improperly excluded evidence is not conclusive and would not establish as a matter of law the position contrary to the trial court's judgment. Additionally, the party opposing the evidence would not have had reason to attempt to rebut the excluded evidence. Thus, it would be an unusual situation in which it would be proper for an appellate court to reverse and render judgment on the basis of improperly excluded evidence. Furthermore, in circumstances such as a class certification hearing, the trial court has broad discretion. Thus, usually we allow the trial court the opportunity to consider all the evidence which should have been properly before it. However, there may be some special situations where it would be appropriate for us to consider the improperly excluded evidence for the first time on appeal as the basis to reverse and render judgment, and we do not foreclose doing so by this decision.