**Opinion issued November 20, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00817-CV

————————————

**HERCULES OFFSHORE, INC. AND THE HERCULES OFFSHORE DRILLING COMPANY, LLC, Appellants**

**V.**

**EXCELL CRANE & HYDRAULICS, INC., Appellee**

On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Case No. 2009-49993

## O P I N I O N

This dispute between Hercules Offshore, Inc. and The Hercules Offshore Drilling Company, LLC (collectively "Hercules") and Excell Crane & Hydraulics, Inc. arises from the parties' conflicting interpretations of indemnity and insurance provisions in their Master Service Agreement (MSA). Hercules contends that the

"additional assured" language in the MSA's insurance provision means that Excell's insurance must be exhausted before Hercules's indemnity obligation is triggered. Excell, on the other hand, argues that Hercules's indemnity obligation is primary, notwithstanding any other provision of the MSA, including the insurance provision. The trial court granted summary judgment in favor of Excell and denied Hercules's motion for summary judgment.

There is an additional wrinkle. This case arises out of a personal-injury lawsuit by Hercules employee Dennis Brunson, who sued Hercules and Excell in Texas state court. Meanwhile, another Hercules employee, Kevin Currey, who was injured in the same incident, sued Hercules and Excell in Louisiana state court. Excell prevailed against Hercules in the Louisiana litigation. The Louisiana judgment in Excell's favor became final while this appeal was pending, and Excell now argues that the Louisiana judgment precludes further litigation in this case and that Excell is entitled to judgment based on principles of res judicata and collateral estoppel.

We conclude that res judicata and collateral estoppel do not apply, and that the trial court erred in granting summary judgment in favor of Excell and in denying Hercules's summary judgment on the contract interpretation issue. Accordingly, we reverse the trial court's summary judgment in favor of Excell, render judgment granting Hercules summary judgment with respect to liability on

2

its breach of contract claim, and remand for further proceedings consistent with this opinion.

## Background

In 2007, Hercules was serving as the drilling operator of a semi-submersible drilling rig off the shore of Louisiana. Three Hercules employees, including Brunson and Currey, were injured when the rig elevator in which they were riding went into a free-fall. Excell had inspected and tested the elevator two months earlier, and it performed this work under the terms of the MSA.

In August 2009, Brunson sued Hercules and Excell in Texas state court. Hercules later settled Brunson's claims against both, leaving only Excell and Hercules's dispute regarding the indemnity and insurance provisions of the MSA. Excell's cross-claim against Hercules was based upon Paragraph 15.B. of the MSA:

> [Hercules] shall defend, release, indemnify and hold harmless [Excell], its parents, subsidiaries, affiliates, officers, directors, employees and agents from and against all liens, claims, demands, causes of action, costs, expenses or losses (including but not limited to attorneys' fees) pertaining to, for or on account of injury to, illness or death of employees, or agents of [Hercules], or employees of the "vessel" as used under 33 U.S.C. § 905(c), or its affiliates, or loss or damage to property of [Hercules], or its affiliates which arise from, are incident to or result directly or indirectly from the performance of the Work, the presence of the above individuals at any job or work site, or transportation to or from such locations, performance of this Agreement, or breach hereof.

3

Excell moved for summary judgment on its cross-claim, arguing that the indemnity provision unambiguously required Hercules to defend and indemnify Excell against Brunson's claims.

Hercules counterclaimed for breach of the MSA, arguing that it was not obligated to indemnify Excell under Paragraph 15.B. until the insurance that Excell was obligated to provide Hercules under Paragraph 9 had been exhausted. Paragraph 9 provided:

> During the term of this Agreement, [Excell] shall maintain at its sole expense the minimum insurance coverage specified in Exhibit "A" with underwriters acceptable to [Hercules], and under the terms of coverage specified, all of which is adopted herein. Except as provided by law, the limits specified therein shall in no way limit liabilities or obligations of Excell for claims arising from performance of this Agreement and any applicable Work Order. . . .

Exhibit A provided that Excell shall maintain comprehensive general liability insurance for overwater operations with a combined single limit of $1 million per occurrence and excess umbrella liability coverage for overwater operations with a combined single limit of $5 million. Exhibit A also provided:

> All insurance policies shall contain a waiver of subrogation in favor of [Hercules], its affiliated companies, and any third parties to whom or for which [Hercules] is under contract or rendering services and/or its and their employees and agents. All insurance policies, except Worker's Compensation, shall name all such parties as additional assureds. All such policies shall be endorsed to provide that additional assureds shall not be liable for premiums and that such policies shall be primary as to additional assureds, regardless of any "excess" or "other insurance" clauses therein. The coverage extended an additional assured shall not be less than that provided to the

4

Contractor. All policies will cover investigation and defense of claims. All policies will include contractually assumed liability coverage.

Thus, Hercules argued that the MSA required Excell to name it an "additional assured" on all required insurance policies, and that the policies were to be "primary" as to Hercules. Hercules further argued that the policies were required to cover "contractually assumed liability coverage"— including any liability assumed under the indemnity provisions of Paragraph 15 of the MSA. It is undisputed that Excell obtained some insurance coverage, but Excell concedes that it did not obtain coverage of the type Hercules argues that Paragraph 9 and Exhibit A require.

Hercules moved for traditional summary judgment on Excell's claim for indemnity and on its own claim for breach of the MSA. Hercules relied on *Ogea v. Loffland Brothers Company*, 622 F.2d 186 (5th Cir. 1980), and its progeny to argue that, where a contract provides that "contractually assumed liability coverage" must be covered under contractually-required insurance policies, and the coverage is required to be primary as to additional assureds, the obligation to provide insurance supersedes any indemnity obligation until the insurance coverage is exhausted.

Excell argued that this case was unlike *Ogea* and its progeny because Paragraph 15.E. of the MSA provided that the indemnity provision superseded the other provisions in the MSA:

> The allocations of risk contained in this Paragraph 15 or elsewhere in this agreement shall apply notwithstanding the simple, gross, sole, joint or concurrent negligence of any person or party (regardless of whether such person or party is an indemnitee or not), the unseaworthiness or other fault of any vessel, "ruin," or strict liability, liability imposed by statute, defects in premises, equipment or material, or any other event or condition whether anticipated or unanticipated and regardless of whether pre-existing this agreement.

In support of this argument, Excell pointed to Paragraph 15.D. which required each party to support its contractually-assumed indemnity obligations with its own insurance.

The trial court initially denied both motions for summary judgment. After both parties moved for reconsideration, the trial court granted Excell's motion for reconsideration, vacated its order denying Excell's motion for summary judgment, and granted Excell's motion for summary judgment. The trial court entered a final judgment, ordering Hercules to defend and indemnify Excell for Brunson's claims pursuant to the MSA. Hercules appealed.

## Discussion

Hercules contends in a single issue that the trial court erred in granting summary judgment for Excell and denying Hercules's motion for summary judgment as to the contract interpretation issue, because federal maritime law,

6

which the parties agree applies here, dictates that the "additional assured" language in the MSA's insurance provision means that Hercules's indemnity obligation is triggered only after Excell exhausts the insurance it agreed to obtain. Excell disagrees and argues that the facts of this case are distinguishable from those in which "additional assured" insurance obligations were held to be primary to indemnity obligations. Excell further argues that the doctrines of res judicata and collateral estoppel bar Hercules from relitigating this issue because the Louisiana judgment in Excell's favor became final while this appeal has been pending.

## A.     Standard of Review

We review a trial court's decision to grant or to deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). "When both sides move for summary judgment, as they did here, and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citing *Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 415–16 (Tex. 2000)).

## B.     Applicable Law

Both parties agree that federal maritime law governs the substantive dispute in this case.  Well-settled Fifth Circuit law, beginning with *Ogea v. Loffland Brothers Company*, 622 F.2d 186 (5th Cir. 1980), holds that a party "who has entered into a contractual indemnity provision but who also names the indemnitor . . . as an additional assured under its liability policies, must first exhaust the insurance it agreed to obtain before seeking contractual indemnity."  *Tullier v. Halliburton Geophysical Servs., Inc.*, 81 F.3d 552, 553 (5th Cir. 1996); *see also Klepac v. Champlin Petroleum Co.*, 842 F.2d 746, 747–48 (5th Cir. 1988).

In *Ogea*, the Fifth Circuit held that contractor Loffland Brothers' insurance obligation must be exhausted before Phillips Petroleum Company's indemnity obligation was triggered.  622 F.2d at 190.  The Fifth Circuit noted that the insurance and indemnity obligations in a maritime contract "must be read in conjunction with each other in order to properly interpret the meaning of the contract."  *Id.*  The *Ogea* contract provided that Phillips would indemnify Loffland Brothers from claims by Phillips' employees or employees of other contractors. *Id.* at 188.  The contract also provided that Loffland Brothers was required to procure a $500,000 insurance policy and name Phillips as a co-insured.  *Id.* at 189.

Another contractor's employee was injured on Phillips' rig and sued Loffland, who in turn asserted a third-party indemnity claim against Phillips.  *Id.* at

8

187. Phillips asserted a counter-claim against Loffland, alleging that Loffland was obligated to obtain liability insurance covering Phillips and that Loffland's insurance obligation primed Phillips' indemnity obligation. *Id.* The district court rendered judgment in favor of Phillips, and the Fifth Circuit affirmed, holding that "[t]he indemnity provisions do not come into play" because Phillips did not have an obligation to indemnify Loffland until the $500,000 policy, on which Phillips was required to be named a co-insured, was exceeded, and it was not. *Id.* at 189–90. The Fifth Circuit held that if Loffland had failed to name Phillips as a co-insured, then Loffland was liable for breach of contract up to $500,000 and Phillips would be relieved of liability. *Id.* at 189.

Since *Ogea*, the Fifth Circuit has consistently held that a party "who has entered into a contractual indemnity provision but who also names the indemnitor . . . as an additional assured under its liability policies, must first exhaust the insurance it agreed to obtain before seeking contractual indemnity." *Tullier*, 81 F.3d at 553; *see Klepac*, 842 F.2d at 747–48.

## C.    Analysis

This case is controlled by *Ogea*. The MSA provided in Paragraph 15.B. that Hercules would indemnify Excell against claims by Hercules's employees. Paragraph 9 provided that Excell "shall maintain at its sole expense the minimum insurance coverage specified in Exhibit 'A,'" and Exhibit A provides:

All insurance policies shall contain a waiver of subrogation in favor of [Hercules], its affiliated companies, and any third parties to whom or for which [Hercules] is under contract or rendering services and/or its and their employees and agents. *All insurance policies*, except Worker's Compensation, *shall name all such parties as additional assureds. All such policies shall be endorsed to provide that* additional assureds shall not be liable for premiums and that *such policies shall be primary as to additional assureds*, regardless of any "excess" or "other insurance" clauses therein. *The coverage extended an additional assured shall not be less than that provided to the Contractor.* All policies will cover investigation and defense of claims. *All policies will include contractually assumed liability coverage.*

(Emphasis added.)

Here, "[t]he controlling fact . . . is the existence of the 'additional assured' coverage whereby [Excell] agreed to procure insurance coverage for the benefit of [Hercules]." *Tullier*, 81 F.3d at 554. "The import of the additional assured clause is emphasized here because [the MSA] also required that insurance procured by [Excell] must afford primary coverage to [Hercules]." *Id.* It also made clear that the policy must include *contractually assumed* liability coverage, and it did not limit the insurance requirement to liability coverage assumed by Excell. *Cf.* William W. Pugh, OIL AND GAS DRILLING CONTRACTS: A LOOK AT THE MAJOR RISK ALLOCATION ISSUES, 2013 No. 3 ROCKY MTN. MIN. L. INST. Paper No. 10, 15 (2013) (under *Ogea*, "when there are conflicting indemnity and insurance requirements, the insurance of the indemnitee must first respond up to the dollar limit of coverage. Only then must the indemnitor honor its hold harmless

10

obligation.  In practice, *this situation may be eliminated by the addition of a sentence limiting the applicability of the additional assured requirement to the risks and liabilities assumed by the party providing the insurance coverage*.") (emphasis added).

Excell argues that this case is distinguishable from *Ogea* because there, the parties specifically negotiated the additional assured provision and agreed that the indemnity obligation would not come into play until after the additional assured insurance was exhausted, while here the parties did not.  But the Fifth Circuit has rejected a nearly identical argument.  In *Tullier v. Halliburton Geophysical Services, Inc.*, 81 F.3d 552 (5th Cir. 1996), the Fifth Circuit held that whether the parties "directly negotiated [the] result . . . is not controlling," because the "legal imperative" is to "read the indemnity and insurance procurement provisions harmoniously."  81 F.3d at 554 (holding that insurance obligation was primary to indemnity obligation).

Excell also argues that Hercules's interpretation ignores key provisions of the MSA, such as Paragraph 15.D., which requires the parties to carry their own insurance for indemnity obligations.  Specifically, Paragraph 15.D. provides: "[a]ll indemnities under this Agreement [] shall be supported by equal amounts of available liability (or other appropriate) insurance to be carried by the indemnifying party at its own expense."  But again, *Tullier* considered and rejected

11

a similar argument, concluding that the indemnitor's obligation was to secure coverage for liability in excess of the coverage under the additional assured provision. The *Tullier* contract required the contractor to "supply primary coverage up to $1,000,000 per incident, with [the company] as an additional assured." *Id.* at 554. The Fifth Circuit held that the company, therefore, "contracted to insure liability over that amount in fulfillment of its indemnity responsibility." *Id.* Similarly, here, Paragraph 15.D. required Hercules to procure insurance to support its indemnity obligation, but that insurance is not triggered until after the limits of insurance that Excell agreed to purchase under Paragraph 9 and Exhibit A are exhausted. *See id.*

Excell further argues that Paragraph 15.E should be interpreted to mean that the indemnity provisions apply notwithstanding anything else contained in the MSA. Essentially, Excell argues that Paragraph 15.E means that indemnities trump all other provisions of the MSA. But Paragraph 15.E does not say this. It provides:

> The allocations of risk contained in this Paragraph 15 or elsewhere in this agreement shall apply notwithstanding the simple, gross, sole, joint or concurrent negligence of any person or party (regardless of whether such person or party is an indemnitee or not), the unseaworthiness or other fault of any vessel, "ruin," or strict liability, liability imposed by statute, defects in premises, equipment or material, or any other event or condition whether anticipated or unanticipated and regardless of whether pre-existing this agreement.

12

This provision gives effect to the indemnities regardless of whose negligence or gross negligence caused the injury; it is designed to allow the indemnities to survive the express negligence rule, not to trump every other provision of the MSA. Moreover, several courts following *Ogea* and its progeny have rejected the argument that this type of provision causes the indemnities to trump a party's obligation to procure primary insurance for an additional assured. *See, e.g.*, *Basin Exploration, Inc. (Del.) v. Ocean Salvage Corp.*, No. Civ.A. 01-526, 2003 WL 943642, at *4–5 (E.D. La. March 7, 2003) (contractor was required to exhaust insurance coverage required under parties' MSA before seeking indemnity where indemnity provision provided for indemnity "notwithstanding anything else in this contract"); *Sonat Exploration v. Falcon Drilling, Co.*, 85 F. Supp. 2d 649, 654 (W.D. La. Sept. 23, 1999) (contract providing for allocation of risk "[n]otwithstanding said insurance provisions" did not abrogate insurance requirements of contract; insurance requirements primed indemnity).

Excell relies primarily on three cases to support its interpretation of the MSA: *Spell v. N.L. Industries, Inc.*, 618 So. 2d 17 (La. App. 3rd Cir. 1993), *Helmerich & Payne International Drilling Company*, 180 S.W.3d 635 (Tex. App.—Houston [14th Dist.] 2005, no pet.), and *Brusco Tug & Barge, Inc. v. St. Paul Fire and Marine Ins. Co.*, 897 F. Supp. 2d 1048 (W.D. Wash. 2012). But, for various reasons, none of these cases carries the day.

13

The Fifth Circuit has determined that the analysis in the first of these, *Spell*, "is inconsistent with that of the Fifth Circuit in *Ogea . . . .*" *Tullier*, 81 F.3d at 552 n.1. *Spell* was also decided under Louisiana law, not federal maritime law. It thus is of little value to this case. *Id.* ("*Spell* was decided under Louisiana law, whereas the case before us involves federal maritime law, *Spell* is not controlling and will not be further discussed.").

In *Helmerich*, the Fourteenth Court of Appeals held that an indemnity provision was primary in a contract that provided that the indemnity provision applied "[n]otwithstanding anything to the contrary contained herein." *Helmerich*, 180 S.W.3d at 638–39. But the MSA at issue in this case contains no such provision. Additionally, the Fourteenth Court applied Texas law, not federal maritime law, as the parties acknowledge we are required to do here. *See id.* at 637.

In the third case Excell relies upon, *Brusco Tug*, the contract expressly stated that certain types of indemnification applied, notwithstanding the contract's insurance requirements:

> Notwithstanding the foregoing provisions as to insurance, liability and indemnity, the parties agree that with respect to their employees, or the employees of their subcontractors, each shall assume liability for, indemnify and hold harmless (including legal costs and fees) from, and procure contractual liability or other insurance with respect to, any loss, damage, claim, liability and/or suit arising out of or relating to bodily injury to their employees or the employees of their subcontractors.

14

*Brusco Tug*, 897 F. Supp. 2d at 1050. The MSA contains no analogous language.

Finally, at oral argument, Excell argued that Hercules's interpretation of the MSA is flawed because it would permit Hercules to claim coverage under Excell's insurance for incidents entirely unrelated to Excell's work. We disagree. We note, first, that in this instance, Hercules is seeking coverage for Brunson's injuries, which allegedly arose as a result of a free fall in an elevator that Excell had certified for use only 50 days earlier. In any event, we do not agree that adopting Hercules's interpretation of the MSA would allow Hercules to seek coverage under Excell's policy for damages unrelated to Excell's work, because the MSA limits the scope of the agreement such that the insurance referenced in Paragraph 9 could apply only to work by Excell, its affiliates, and its subcontractors for Hercules or its affiliated companies.

Accordingly, following well-settled Fifth Circuit maritime law, we conclude that Hercules is not obligated to indemnify Excell under Paragraph 15 of the MSA until the limits of insurance coverage that Excell was obligated to purchase by Paragraph 9 and Exhibit A of the MSA have been exhausted. *See Ogea*, 622 F.2d at 189–90; *Klepac*, 842 F.2d at 747–48; *Tullier*, 81 F.3d at 553–54. We therefore hold that the trial court erred in granting Excell's summary judgment and denying Hercules's summary judgment as to the interpretation of the MSA.

15

**D.    Res Judicata and Collateral Estoppel**

After briefing in this appeal was complete, Excell sought leave to file a supplemental brief in which it argued that the doctrines of res judicata and collateral estoppel preclude further litigation and that Excell is entitled to judgment in its favor.  The basis of the argument is that a Louisiana state court adjudicated the same issue presented in this case and entered a final judgment in Excell's favor.  The Louisiana case arose from the same incident.  Currey, who was injured in the same elevator accident as Brunson, sued in Louisiana, and Excell and Hercules litigated in Louisiana the very same insurance and indemnity issues presented in this appeal.

No collateral estoppel or res judicata defense was raised in the trial court below because the Louisiana judgment only became final while this appeal has been pending.  Nevertheless, Excell argues in its supplemental brief that it is not too late for the preclusion principles to be applied and that, in fact, we are required to enter judgment in its favor now that the Louisiana judgment is final.  Hercules responds that res judicata and collateral estoppel are affirmative defenses that must be pleaded and proved and may not be raised for the first time on appeal, and that applying these doctrines in this case would be unfair.

16

### 1. Applicable Law

Because the final judgment upon which Excell relies was rendered by a Louisiana court, Louisiana law governs its res judicata and collateral estoppel effect. *See Purcell v. Bellinger*, 940 S.W.2d 599, 601 (Tex. 1997) (court of appeals erred in applying Texas law in determining res judicata effect of New York state court judgment; proper question was whether New York judgment would have preclusive effect on Texas suit if it had been brought in New York); *Monsanto Co. v. Davis*, 25 S.W.3d 773, 787 (Tex. App.—Waco 2000, pet. dism'd w.o.j.) (because final judgment was rendered by Louisiana state court, Louisiana law governed its res judicata effect); *Villanueva v. Office of Atty. Gen.*, 935 S.W.2d 953, 956 (Tex. App.—San Antonio 1996, writ denied) (res judicata effect of Indiana trial court order determined by applying Indiana law). While Louisiana substantive law controls the effect of the Louisiana judgment, "Texas procedural rules control how that effect is determined." *Monsanto*, 25 S.W.3d at 787.

### 2. Analysis

We agree with Hercules that we should decline to apply res judicata and collateral estoppel. While Louisiana substantive law controls the effect of the Louisiana judgment, "Texas procedural rules control how that effect is determined." *Monsanto*, 25 S.W.3d at 787. In Texas, res judicata and collateral estoppel are affirmative defenses that are waived if not raised in the trial court, and

17

cannot be raised for the first time on appeal. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994); *Worldpeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 458–59 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). It is undisputed that Excell did not plead and prove the defenses in the trial court and that the trial court never considered Excell's arguments regarding res judicata or collateral estoppel: they were raised for the first time in Excell's supplemental brief, which it filed after briefing in this appeal was complete.

We recognize that Excell could not raise these defenses in the trial court because the Louisiana judgment did not become final until the Louisiana Supreme Court denied Hercules's writ application in February 2014, when this case was already on appeal. But we may not affirm a summary judgment on a ground not included the motion. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (trial court may not grant summary judgment on ground not included in summary-judgment motion, and appellate court may not affirm summary judgment on ground not included in motion). The trial court was not asked—nor could it have been asked—to render a judgment based upon res judicata or collateral estoppel. On the record it had before it at the time it granted summary judgment, the trial court should have granted summary judgment for Hercules on the contract interpretation issue. Accordingly, we decline to hold that the Louisiana judgment has preclusive effect in this case. *See Stiles*, 867 S.W.2d at 26.

## Conclusion

We reverse the trial court's summary judgment in favor of Excell and render judgment granting Hercules summary judgment with respect to liability on its breach of contract claim.  Although Hercules requested rendition on all issues in its brief, it conceded at oral argument that we cannot render judgment on damages because it did not conclusively prove them.  Accordingly, we remand to the trial court to determine the amount of Hercules's damages and whether Excell is entitled to an offset, and to enter judgment accordingly.


Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.