**Opinion issued November 30, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00940-CV

————————————

**BENJAMIN "B.J." REYNOLDS, MARK MEWSHAW, WES HOBBS, AND TERRA ENERGY PARTNERS LLC, Appellants**

**V.**

**SANCHEZ OIL AND GAS CORPORATION, SANCHEZ ENERGY CORPORATION, AND SANCHEZ PRODUCTION PARTNERS LP, Appellees**

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Case No. 2016-18909**

---

## MEMORANDUM OPINION ON REHEARING

Appellants Benjamin "B.J." Reynolds, Mark Mewshaw, Wes Hobbs

(collectively, the "individual appellants"), and Terra Energy Partners LLC ("Terra")

have moved for rehearing of our May 9, 2023 opinion and judgment. We grant the motion for rehearing, withdraw our May 9, 2023 opinion and judgment, and issue this opinion and judgment in their stead.

This interlocutory appeal returns to this Court on remand from the Texas Supreme Court with instructions to reconsider our prior holding in light of intervening precedent and to reach any remaining issues as necessary to dispose of this appeal. The individual appellants and Terra appeal the denial of their amended motion to dismiss under the Texas Citizens Participation Act ("TCPA").[1]

Appellants raise five issues on appeal.[2] In their first three issues, appellants argue that the trial court erred by denying their amended TCPA dismissal motion because it was timely filed; appellees did not meet their burden to establish by clear and specific evidence a prima facie case of each element of the challenged claims;

---

[1] In 2019, the Texas Legislature amended several provisions of the TCPA. The amendments became effective on September 1, 2019, and they apply to cases filed on or after that date. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 129 (Tex. 2019) (citing Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684). "The prior version of the statute continues, however, to control cases filed before September 1, 2019." *Id.*; *see Gardner v. Tuskey*, No. 01-19-00599-CV, 2020 WL 2069809, at *1 n.1 (Tex. App.—Houston [1st Dist.] Apr. 30, 2020, no pet.) (mem. op.). This case was filed before September 1, 2019, so it is governed by the pre-amendment version of the statute. *See Creative Oil*, 591 S.W.3d at 129; *Gardner*, 2020 WL 2069809, at *1 n.1. All citations to the TCPA in this opinion are to the pre-amendment version of the statute.

[2] Appellants also raise the issue of whether the TCPA applies to the challenged claims, but the Sanchez parties do not dispute this issue. Accordingly, we do not list it as a separate issue.

2

and appellants met their burden to establish defenses to some of the challenged claims.[3] As part of their second issue, appellants contend that appellees lack standing to assert their trade secret misappropriation claims, and therefore the trial court lacked subject-matter jurisdiction over these claims. In their fourth issue, appellants argue that the trial court abused its discretion by finding that the amended TCPA dismissal motion was solely intended to delay, a necessary finding to support an award of attorney's fees and costs to appellees as responding parties under the TCPA. Finally, in their fifth issue, appellants argue that they are entitled to attorney's fees under Civil Practice and Remedies Code section 27.009. After reconsidering our prior holding and reaching the remaining issues that are necessary to dispose of this appeal, we affirm in part, reverse and render judgment in part, and reverse and remand in part.

## Background

Appellees Sanchez Oil and Gas Corp., Sanchez Energy Corp., and Sanchez Production Partners LP (collectively "Sanchez" or the "Sanchez parties") are affiliated entities engaged in the business of oil exploration and production in Texas and in the Gulf Coast, Mid-Continent, and Rocky Mountain regions. Over the course

---

[3] Terra and the individual appellants filed separate briefs presenting the same issues but in a different order. We have adopted the order of issues presented in Terra's briefs.

of their forty-five years in operation, the Sanchez parties have allegedly invested in and developed "a wide array of valuable trade secret materials" that provides them with "extensive competitive advantages in the oil and gas industry."

The Sanchez parties allege that these trade secrets consist of bidding, acquisition, and due diligence files related to large oil-and-gas assets; vendor lists with pricing and contact information; project files including cost trackers, invoices, proposals, financial data and projections, engineering schematics, and various internal reports; and geologic and production data.

The Sanchez parties ultimately organized their trade secrets into eight categories with multiple subcategories. One category is a cost-reduction program, which the Sanchez parties argue allows them "to track and negotiate competitive and confidential unit-cost rates from vendors." The Sanchez parties argue that they are "an industry leader in cost reduction[.]" Another category is "a library of well and operations data" and business development files that the Sanchez parties used to analyze potential acquisitions. This library also includes subsurface data, such as seismic data, well logs, core samples, and other geotechnical and geophysical information. Finally, the trade secrets also consist of operational data, drilling manuals containing Sanchez's best practices, and facilities designs and diagrams.

The Sanchez parties allegedly employed confidentiality agreements, computer security software, and other measures to protect their confidential

information and trade secrets. For example, the employee handbook requires employees to maintain strict confidentiality of all confidential information, including Sanchez trade secrets, and to return all confidential information if the employee is terminated. Confidential information is provided to employees on a need-to-know basis and is contained in computer files that employees access with a username and password, and computer security software tracks employees' access to the files. When the Sanchez parties provide third-party vendors with access to confidential information, the vendors are required to sign agreements containing confidentiality clauses. The Sanchez parties require visitors to their offices to be escorted at all times, and the companies prohibit exposing confidential information to visitors.

In 2014, the Sanchez parties hired the three individual appellants as engineers. As part of their jobs, they were required to access the Sanchez parties' confidential information. They each signed the employee handbook requiring them to maintain strict confidentiality of the Sanchez parties' confidential information.

In July 2015, Reynolds accepted employment with the Sanchez parties' "direct competitor," Terra. Shortly after it was established earlier that year, Terra began soliciting Reynolds for employment and eventually hired him as a vice president of operations. The day after accepting employment with Terra but before resigning from Sanchez, Reynolds allegedly copied several thousand confidential

5

files from the Sanchez parties' computers onto a thumb drive without permission. After notifying the Sanchez parties of his resignation, Reynolds allegedly purchased an external hard drive and downloaded thousands more files without Sanchez's permission. Reynolds also allegedly emailed himself a list of all the Sanchez parties' vendors and suppliers. Forensic analysis and other evidence showed that Reynolds regularly accessed these files from his Terra-issued laptop shortly after beginning employment at Terra. The Sanchez parties alleged that he took these files on behalf of and with the encouragement of Terra.

Once employed at Terra, Reynolds assisted Terra in bidding on potential oil field assets by examining cost data and performing technical and cost analysis. At least one of Terra's bids was in direct competition with the Sanchez parties. Reynolds' work and alleged use of the Sanchez parties' confidential information and trade secrets helped Terra obtain financial backing for the company.

Reynolds and Terra allegedly began soliciting other employees from the Sanchez parties. Eventually, both Mewshaw and Hobbs resigned from Sanchez and went to work for Terra. The Sanchez parties alleged that before resigning and without their permission, Mewshaw copied approximately 30,000 files from Sanchez computer servers onto an external hard drive, and Hobbs also copied Sanchez files onto a cloud storage account. Many of these files contained trade

6

secrets and other confidential information. Mewshaw also allegedly solicited Sanchez employees to join Terra while he was still employed at Sanchez.

Shortly before filing the underlying lawsuit, the Sanchez parties discovered that the individual appellants had allegedly copied and taken the files, many of which contained valuable trade secrets and confidential information. Sanchez demanded the return of these files, but appellants initially rebuffed these demands.

In March 2016, the Sanchez parties filed suit against appellants and asserted claims for misappropriation of trade secrets, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, breach of contract, and violation of the Harmful Access by Computer Act. *See* TEX. CIV. PRAC. & REM. CODE § 143.001(a). The Sanchez parties also sought injunctive relief and obtained a temporary restraining order requiring appellants to return all of the Sanchez parties' files. The individual appellants returned more than fifteen storage devices containing files they allegedly took from the Sanchez parties.

In July 2016, the Sanchez parties filed a first amended petition that was virtually identical to the original petition.

In July 2018, the Sanchez parties filed a second amended petition, which included many of the claims previously asserted. However, instead of asserting a claim for aiding and abetting breach of fiduciary duties, as in the first two petitions, the second amended petition substituted two causes of action based on breach of

7

fiduciary duties: Count 6 for assisting or encouraging breaches of fiduciary duties and Count 7 for assisting and participating in breaches of fiduciary duties.

Other relevant differences exist between the second amended petition and the prior petitions. For example, while the prior petitions alleged that Terra hired Reynolds as a vice president of operations and encouraged his misappropriation of Sanchez's trade secrets and other information, the second amended petition added that Reynolds "act[ed] on behalf of and as an officer of his new employer Terra" when he took the Sanchez parties' trade secrets. The petition also added that "Terra is directly and/or vicariously liable for all of Reynolds' actions set forth herein." The petition also added some language about meetings and discussions between appellants in furtherance of their alleged misappropriation of trade secrets.

Within sixty days of the filing of the second amended petition, appellants filed the amended motion to dismiss under the TCPA, which is the motion at issue in this appeal.[4] The amended TCPA motion sought to dismiss all causes of action except the action for violation of the Harmful Access by Computer Act. The primary dispute concerned whether each of the challenged claims in the second amended petition

---

[4] In their original motion to dismiss, appellants sought to dismiss only Counts 2–4, which were claims derivative of the Sanchez parties' misappropriation of trade secrets cause of action. The Sanchez parties filed a notice of nonsuit of these challenged claims and a notice of non-opposition to the motion to dismiss. The trial court signed an order granting the original TCPA motion and dismissing these three causes of action with prejudice. These claims are not at issue in this appeal.

constituted a new "legal action" under the TCPA, which triggers a new sixty-day deadline to seek dismissal. After a lengthy oral hearing, the trial court entered a written order denying the amended TCPA motion. The order included a finding that appellants filed the amended TCPA motion solely intending to delay the proceeding and stated that the court would award attorney's fees and costs to the Sanchez parties in a separate order. Appellants appealed.

On appeal, this Court affirmed. *See generally Reynolds v. Sanchez Oil & Gas Corp.*, 617 S.W.3d 30 (Tex. App.—Houston [1st Dist.] 2020), *vacated*, 635 S.W.3d 636 (Tex. 2021) (per curiam). The Court held that the amended TCPA motion was untimely because the second amended petition did not assert a new "legal action," as defined by the TCPA. Therefore, the second amended petition did not trigger a new deadline to file a TCPA motion. *Id.* at 50.

After our opinion issued in this appeal, the Texas Supreme Court handed down two opinions that conflicted with our opinion. *See Montelongo v. Abrea*, 622 S.W.3d 290 (Tex. 2021); *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 835 (Tex. 2021). Appellants petitioned the Texas Supreme Court for review. Without hearing oral argument, the Texas Supreme Court vacated our judgment in this case and remanded to this Court to reconsider our holding in light of *Montelongo* and *Kinder Morgan* and to reach any remaining issues necessary to dispose of this appeal. *Reynolds*, 635 S.W.3d at 637.

9

The parties filed supplemental briefs on remand. We now reconsider our prior holding and any remaining issues necessary to dispose of this appeal.

## Standing

In part of its second issue, Terra argues that the Sanchez parties did not prove they owned the trade secrets at issue and therefore did not establish standing to assert their claims.

Standing is a component of subject-matter jurisdiction, which is "essential to the authority of a court to decide a case," and it may be raised at any time. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44, 445 (Tex. 1993); *see State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (stating that court must have subject-matter jurisdiction before it may address merits of case). To establish standing, a plaintiff must allege an injury in fact that is fairly traceable to the defendant's wrongful conduct and likely to be redressed by the requested relief. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154–56 (Tex. 2012); *Holcomb v. Waller Cnty.*, 546 S.W.3d 833, 837 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("We begin our [standing] analysis by identifying the alleged wrong and deciding whether there was a causal connection between the defendant's actions and the injury caused by the alleged wrong.").

Whether a court has subject-matter jurisdiction is an issue of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–

10

26 (Tex. 2004). A defendant may challenge the court's jurisdiction by challenging the pleadings or the existence of jurisdictional facts. *Id.* at 226–27. If the pleadings are challenged, we determine whether the pleader has alleged facts affirmatively demonstrating the court's jurisdiction. *Id.* at 226. We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the unchallenged factual jurisdictional allegations in the pleadings. *Id.* If the challenge is to the existence of jurisdictional facts, the challenger must first assert—and support with evidence—that the trial court lacks subject-matter jurisdiction. *Id.* at 228. If the challenger supports the assertion with evidence, then the plaintiff must show that a disputed material fact exists regarding the jurisdictional issue. *Id.* In sum, if the pleadings sufficiently demonstrate jurisdiction and the defendant does not challenge the factual allegations with supporting evidence, then our inquiry ends. *Id.* at 226–28; *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 23 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

In their second amended petition, the Sanchez parties alleged that they own numerous trade secrets which they developed over their forty-five-year company history. They alleged that the individual appellants violated their contractual and legal duties by copying and taking "thousands of digital files containing an even larger number of documents, emails, and email attachments with them when they left" their employment with the Sanchez parties. They also alleged that Terra and

11

the individual appellants improperly solicited their employees. The claim for misappropriation of trade secrets expressly alleged that appellants "have misappropriated numerous trade secrets owned by Sanchez and have thereby caused damage to Sanchez and unjustly enriched themselves." The petition sought damages for these claims.

These factual allegations demonstrate that the Sanchez parties were injured by the alleged theft, disclosure, and use of their valuable trade secrets and other confidential information and by the solicitation of their employees. Furthermore, these injuries are fairly traceable to each appellant's conduct and likely to be redressed by the requested damages. *See Heckman*, 369 S.W.3d at 154–55 (stating that standing requires injury in fact fairly traceable to defendant's wrongful conduct and likely redressable by requested relief and that injury alleged must be personal to plaintiff, actual or imminent, concrete and particularized, and not hypothetical). Thus, the factual allegations in the petition establish that the Sanchez parties have standing to assert their claims. *See Miranda*, 133 S.W.3d at 226.

Terra does not challenge the pleadings, but instead argues that under the TCPA's burden-shifting framework, the Sanchez parties were required to prove their standing—specifically, their ownership over the trade secrets and other confidential information—by clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c) ("The court may not dismiss a legal action under [the TCPA] if the party

bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."). Terra cites no authority supporting this argument.

The Fourteenth Court of Appeals has considered this issue and held that "the TCPA burden-shifting procedure is not a proper framework to analyze appellees' standing and mootness arguments, and we are not constrained to analyze those arguments under the TCPA rubric even though appellees brought them to the court's attention in the context of such a motion." *Buzbee*, 616 S.W.3d at 23. Although subject-matter jurisdiction can be challenged by different means, such as a plea to the jurisdiction or a motion for summary judgment, "it does not follow that a court must analyze jurisdiction using the TCPA burden-shifting procedure, a mechanism ill-suited for resolving whether a court is authorized to decide a controversy." *Id.* at 22. "[T]he absence of standing at the outset of a lawsuit deprives the court of jurisdiction to apply the TCPA at all." *Id.*

We agree with this reasoning and conclude that the Sanchez parties were not required to prove standing by clear and specific evidence as part of their burden under the TCPA framework. Rather, the Sanchez parties were required to plead facts affirmatively demonstrating the court's jurisdiction, and we have already determined that they met this burden. *See Miranda*, 133 S.W.3d 226. Terra did not present any evidence negating the jurisdictional allegations, and therefore the Sanchez parties

13

were not required to prove that a disputed material fact existed regarding standing. *See id.* at 226–28; *Buzbee*, 616 S.W.3d at 23. We conclude that the Sanchez parties have standing to assert their claims. We overrule Terra's jurisdictional sub-issue.

## Texas Citizens Participation Act

The TCPA is an anti-SLAPP (Strategic Lawsuits Against Public Participation) statute enacted by the Texas Legislature "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (stating that TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern"). Within certain prescribed time limits, the TCPA authorizes a defendant to move to dismiss claims that relate to the defendant's exercise of these rights. TEX. CIV. PRAC. & REM. CODE § 27.003(a), (b); *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). If a TCPA dismissal motion is timely filed, courts employ a three-step burden-shifting decisional process to determine whether dismissal is appropriate. TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b)–(d).

This case requires us to decide whether appellants timely filed the motion to dismiss claims asserted in the Sanchez parties' second amended petition and, if so,

14

whether dismissal is appropriate under the TCPA's three-step burden-shifting framework.

## A.    Standard of Review

We review de novo a trial court's denial of a TCPA dismissal motion. *Mattress Firm, Inc. v. Deitch*, 612 S.W.3d 467, 478 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.— Houston [1st Dist.] 2020, pet dism'd) (en banc). In conducting our review, we consider the pleadings and supporting and opposing affidavits in a light most favorable to the nonmovant. TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Deitch*, 612 S.W.3d at 478; *Gaskamp*, 596 S.W.3d at 470.

Whether the TCPA applies to a particular claim is an issue of statutory interpretation that we review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). Our objective in construing a statute is to ascertain and give effect to the Legislature's intent as expressed in the language of the statute. *Id.* We construe statutory terms "according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Id.* (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We must consider the specific statutory language at issue and the statute as a whole. *In re Off. of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding); *see Youngkin*, 546 S.W.3d at 680 ("[L]egislative intent derives from an

15

act as a whole rather than from isolated portions of it."). We "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *In re Off. of Att'y Gen.*, 422 S.W.3d at 629.

## B. Timeliness of Motion to Dismiss under TCPA

In their first issue, appellants argue that their amended TCPA motion was timely filed after the Sanchez parties filed their second amended petition.

### 1. Applicable Law

A motion to dismiss under the TCPA "must be filed not later than the 60th day after the date of service of the legal action" that the party seeks to dismiss. TEX. CIV. PRAC. & REM. CODE § 27.003(b). The TCPA defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6).

The Texas Supreme Court recently issued two opinions interpreting the phrase "cause of action" within the TCPA's definition of "legal action." *See id.* In *Montelongo*, the court held that

> an amended or supplemental pleading that asserts the same legal claims or theories by and against the same parties and based on the same essential facts alleged in a prior pleading asserts the same "legal action" to which the sixty-day period previously applied and thus does not trigger a new sixty-day period for filing a dismissal motion. But to the extent an amended or supplemental pleading either (1) adds a new party or parties, (2) alleges new essential facts to support previously asserted claims, or (3) asserts new legal claims or theories involving different

16

elements than the claims or theories previously asserted, the new pleading asserts a new legal action and triggers a new sixty-day period as to those new parties, facts, or claims.

622 S.W.3d at 293–94. The court clarified that "[a] new claim that does not involve different elements, however, or that is merely a 'subset' of previously filed claims, does not assert a new legal action." *Id.* at 301 (citations omitted). *Montelongo* specifically concerned the third category mentioned above—whether an amended petition adding new legal claims based on the same essential facts previously alleged constitutes a new legal action triggering a new sixty-day period to file a dismissal motion. *Id.* at 293.

In *Kinder Morgan*, the court considered the second category of a new "legal action": a TCPA motion seeking dismissal of new essential factual allegations in an amended petition. 622 S.W.3d at 838. In that case, Scurry County filed suit seeking reappraisal of unspecified property owned by Kinder Morgan, alleging that the property had been undervalued for ad valorem tax purposes. *Id.* at 839. The original petition contained no factual allegations, but an amended petition added numerous facts, including that Kinder Morgan knowingly and purposefully provided inaccurate or incomplete information in tax filings. *Id.* at 839–41.

Kinder Morgan sought dismissal under the TCPA, arguing that the allegations added in the amended petition for the first time implicated its constitutional rights to speak freely and to petition the government. *Id.* at 840–41. On appeal, the Texas

17

Supreme Court reasoned that the prior petitions did not provide fair notice of the essential factual allegations raised in the amended petition:

> A cause of action is sufficiently pleaded only if the petition gives fair notice of the claim involved. The key inquiry is whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. Our notice-pleading rules require pleadings to not only give notice of the claim and the relief sought but also of the essential factual allegations. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. To paraphrase from *Montelongo*, providing only fair notice of claims does not provide fair notice of the essential factual allegations supporting those claims.
>
> * * * *
>
> Just as essential factual allegations may give rise to a variety of different legal theories, legal theories may be supported by a variety of different factual scenarios. The pleading of a legal theory, without more, does not provide notice of the facts that could be pleaded to support that theory.

*Id.* at 849–50 (internal citations and quotation marks omitted).

### 2. Filing of Amended Petition

Appellants initially contend that the filing of an amended petition alone triggers a new dismissal deadline under the TCPA regardless of whether the claims and factual allegations were previously pleaded.[5] The sixty-day deadline to file a TCPA motion is triggered by the filing of a "legal action," which is defined to include a "petition." TEX. CIV. PRAC. & REM. CODE §§ 27.001(6), 27.003(b).

---

[5] Appellants raised this argument in their original opening appellate brief, but they did not mention it again in their supplemental briefing upon remand from the Texas Supreme Court. Because the argument was not withdrawn, we briefly address it.

18

Although the statutory definition of "legal action" is broad, the *Montelongo* court held that the filing of an amended or supplemental petition asserting the same "legal action[s]" as prior petitions "does not trigger a new sixty-day period for filing a dismissal motion." 622 S.W.3d at 298; *accord Kinder Morgan*, 622 S.W.3d at 848. Construing the TCPA otherwise "would render the Act's deadlines meaningless." *Montelongo*, 622 S.W.3d at 298. Accordingly, we conclude that merely filing an amended petition does not trigger a new sixty-day deadline to file a TCPA dismissal motion.

### 3.    New Causes of Action

Appellants also contend that the second amended petition added two new causes of action: Count 6 for "Assisting or Encouraging Breaches of Fiduciary Duties Against All Defendants" and Count 7 for "Assisting and Participating in Breaches of Fiduciary Duties Against All Individual Defendants." They argue that these causes of action added an element not previously pleaded, specifically that the assistance, encouragement, or participation was a substantial factor in the underlying breach of fiduciary duty. The Sanchez parties respond that these claims were merely split from or subsets of the prior cause of action entitled "Aiding and Abetting Breaches of Fiduciary Duties Against All Defendants." The Sanchez parties argue that because this aiding-and-abetting cause of action requires substantial assistance

19

or participation, the later-pleaded claims did not include new elements and therefore do not constitute new legal actions under the TCPA.

As stated above, *Montelongo* held that an amended or supplemental pleading that asserts the same legal claims or theories by and against the same parties based on the same essential facts previously alleged constitutes the same legal action and does not trigger a new sixty-day period to file a TCPA dismissal motion. 622 S.W.3d at 293. The court clarified, however, that an amended or supplemental pleading will trigger a new sixty-day period to file a TCPA motion when the pleading (1) adds a new party, triggering a new period as to claims asserted against the new party; (2) alleges new essential facts to support previously asserted claims, triggering a new period as to those new facts; or (3) asserts new legal claims or theories involving different elements than the claims or theories previously asserted, triggering a new period as to those new claims. *Id.* at 293–94. The court also noted that a "new claim that does not involve different elements" or that "is merely a 'subset' of previously filed claims" does not assert a new legal action. *Id.* at 301 (citations omitted).

The Sanchez parties' earlier-pleaded claim entitled "Aiding and Abetting Breaches of Fiduciary Duties Against All Defendants" alleged that:

(1)    the individual appellants owed fiduciary duties to the Sanchez parties;

(2)    the individual appellants breached these fiduciary duties;

(3)    all appellants, including Terra, knew that the individual appellants owed such fiduciary duties;

20

(4)    all appellants knowingly participated in the individual appellants' breaches of their fiduciary duties; and

(5)    the breaches caused damages.

The second amended petition did not include this claim verbatim or a claim titled as an aiding-and-abetting claim. Instead, this petition substituted two similarly worded claims: Count 6 for assisting or encouraging breaches of fiduciary duties and Count 7 for assisting and participating in breaches of fiduciary duties. The assisting-or-encouraging claim—Count 6—alleged that:

(1)    the individual appellants owed fiduciary duties to the Sanchez parties;

(2)    the individual appellants breached these fiduciary duties;

(3)    all appellants, including Terra, knew that the individual appellants owed such fiduciary duties;

(4)    all appellants knowingly and intentionally participated in the individual appellants' breaches of their fiduciary duties "by providing assistance or encouragement";

(5)    all appellants' assistance or encouragement was a substantial factor in causing the breaches; and

(6)    the breaches caused damages.

The assisting-and-participating claim—Count 7—alleged that:

(1)    the individual appellants owed fiduciary duties to the Sanchez parties;

(2)    the individual appellants breached these fiduciary duties;

(3)    Terra owed a statutory duty to the Sanchez parties;

(4)    Terra breached its statutory duty;

(5)    all appellants provided substantial assistance to the individual appellants' breaches of their fiduciary duties;

21

(6) all appellants' participation was a substantial factor in causing the breaches of fiduciary duties; and

(7) the breaches caused damages.

Comparing the earlier-pleaded claim with the two later-pleaded claims reveals the addition of an element in each of the two later claims that was not previously pleaded. The assisting-or-encouraging claim added that the assistance or encouragement was a substantial factor in causing the breaches of fiduciary duties. The assisting-and-participating claim added that there was substantial assistance and the participation was a substantial factor in causing the breaches of fiduciary duties. Because these two later-pleaded claims include additional elements not previously pleaded, we agree with appellants that they constitute new legal actions that trigger a new TCPA dismissal deadline as to these new claims. *See id.* at 293–94.

The Sanchez parties argue, however, that a claim for aiding and abetting a breach of fiduciary duty requires substantial assistance, and therefore the later-pleaded claims did not involve different elements than the earlier-pleaded aiding-and-abetting claim. Texas law does not currently recognize a cause of action for aiding and abetting a tort, including a breach of fiduciary duty. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (noting that court "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting"); *Nguyen v. Watts*, 605 S.W.3d 761, 793 (Tex. App.— Houston [1st Dist.] 2020, pet. denied) (discussing aiding-and-abetting claim "to the

22

extent it is an actionable tort in Texas"). Courts discussing this claim, however, generally opine that it would require proof that the defendant's conduct in assisting or encouraging the primary tortfeasor was a substantial factor in causing the tort. *See Parker*, 514 S.W.3d at 225 (recognizing that although court has never recognized aiding-and-abetting claim, such claim nevertheless "requires evidence that the defendant, with wrongful intent, substantially assisted and encouraged a tortfeasor in a wrongful act that harmed the plaintiff"); *Control & Applications LLC Houston v. Abdallah*, No. 01-20-00239-CV, 2022 WL 3650133, at *13 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) (mem. op.) (describing substantial assistance as element of aiding-and-abetting liability); *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014, pet. denied) (stating that claims for aiding and abetting "require the actor, with unlawful intent, to give substantial assistance and encouragement to a wrongdoer in a tortious act").

The elements of a civil aiding-and-abetting claim, to the extent such a claim is actionable in Texas, are: (1) the primary actor committed a tort; (2) the defendant knew that the primary actor's conduct constituted a tort; (3) the defendant intended to assist the primary actor; (4) the defendant gave the primary actor assistance or encouragement; and (5) the defendant's conduct was a substantial factor in causing the tort. *Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We therefore agree with

the Sanchez parties that a civil aiding-and-abetting claim, to the extent it is viable in Texas, requires proof of substantial assistance or encouragement in causing the tort.

The Sanchez parties did not, however, plead the substantial-factor element in their earlier-pleaded aiding-and-abetting claim. Rather, that claim alleged only that (1) the individual appellants owed the Sanchez parties fiduciary duties, which they breached; (2) appellants knew the individual appellants owed such fiduciary duties; (3) appellants knowingly participated in the individual appellants' breaches of fiduciary duties; and (4) the Sanchez parties suffered damages as a result of the breaches.

The Sanchez parties argue that this "aiding and abetting" claim implied the substantial-factor element. We disagree.

Courts prioritize substance over form when construing the claims asserted in a petition. *See, e.g.*, *In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) (per curiam) (emphasizing that "courts should acknowledge the substance of the relief sought despite the formal styling of the pleading") (citation omitted); *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it."); *accord Brumley v. McDuff*, 616 S.W.3d 826, 833 (Tex. 2021) (confirming that "the substance of the plaintiff's pleadings determines whether a claim sounds in trespass to try title"). Although we liberally construe pleadings in the pleader's favor,

24

a liberal construction "does not require a court to read into a petition what is plainly not there." *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018) (citation omitted).

Despite being titled as an aiding-and-abetting claim, this earlier-pleaded claim actually stated a claim for a related but distinct cause of action: knowing participation in a breach of fiduciary duty. Texas law does recognize a knowing-participation claim. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942) ("It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such."); *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (op. on reh'g) (recognizing cause of action "in which a third party knowingly participates in an employee's breach of fiduciary duty during his employment and the third party improperly benefits from it"). The elements of this claim are: (1) the existence of a fiduciary duty owed by a third party to the plaintiff; (2) the defendant knew of the fiduciary relationship; and (3) the defendant was aware of his participation in the third party's breach of its duty. *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied); *Darocy v. Abildtrup*, 345 S.W.3d 129, 137–38 (Tex. App.—Dallas 2011, no pet.). This is precisely what the Sanchez parties' earlier pleadings alleged: (1) the individual appellants owed fiduciary duties to the Sanchez parties; (2) all appellants knew that the individual appellants owed

these fiduciary duties; (3) all appellants knowingly participated in the individual appellants' breaches of fiduciary duties; and (4) the breaches caused damage. *See Straehla*, 619 S.W.3d at 804.

The omission of the substantial assistance element in the prior pleadings differentiates an aiding-and-abetting claim from a knowing-participation claim. *See Bos*, 556 S.W.3d at 306 (stating liberal construction of pleadings does not require court to read into petition what is plainly not there). Construing the earlier pleadings according to their substance rather than their form, as we must, we conclude that the earlier pleadings stated a cause of action for knowing participation in breach of fiduciary duty, not aiding and abetting breach of fiduciary duty. *See In re J.Z.P.*, 484 S.W.3d at 925; *Heard*, 603 S.W.2d at 833.

Because the earlier pleadings stated a claim for knowing participation of breach of fiduciary duty and did not plead the substantial-factor element, the addition of this element in both Count 6 and Count 7 in the second amended petition stated new legal actions under the TCPA. *See Montelongo*, 622 S.W.3d at 301 ("[A]n amended or supplemental pleading that asserts a new claim involving different elements than a previously asserted claim also asserts a new legal action that triggers a new sixty-day period for filing a motion to dismiss that new claim."). Therefore, the amended TCPA motion was timely filed as to these two causes of action.

## 4. New Theory of Vicarious Liability

Appellants also contend that the second amended petition asserted a new legal theory based on a new essential factual allegation: that Terra was vicariously liable for all of Reynolds' actions and Reynolds acted as "an officer" of Terra when he allegedly stole the Sanchez parties' trade secrets and other confidential information. The Sanchez parties respond that vicarious liability is a derivative claim, not an independent claim with different elements than the claims previously asserted. Alternatively, assuming that vicarious liability can constitute a legal action under the TCPA, the Sanchez parties argue that it is not a *new* legal action because Terra had fair notice of this claim from allegations in the prior petitions that Reynolds acted on behalf of and with the encouragement of Terra when misappropriating the trade secrets and that all appellants—including Terra—were jointly and severally liable.[6]

The *Montelongo* court construed "cause of action" within the meaning of "legal action" under the TCPA and held that "an amended or supplemental pleading

---

[6] The Sanchez parties argue for the first time in their supplemental brief after remand that appellants have not explained how vicarious liability is based on the exercise of the right of free speech, right to petition, or right of association such that the TCPA applies. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a). The Sanchez parties did not dispute this part of the TCPA framework in either the trial court or in their original briefing on appeal. We will not consider this argument raised for the first time in a supplemental brief. *See Hercules Offshore, Inc. v. Excell Crane & Hydraulics, Inc.*, 454 S.W.3d 70, 78 (Tex. App.—Houston [1st Dist.] 2014, pet. dism'd) (declining to consider arguments raised for first time in supplemental brief on appeal).

that asserts a new claim involving different elements than a previously asserted claim also asserts a new legal action that triggers a new sixty-day period for filing a motion to dismiss that new claim." *Id.* The court noted, however, that a new claim that does not involve different elements or that is merely a subset of previously filed claims does not assert a new legal action. *Id.*

Respondeat superior, or vicarious liability, is a common-law doctrine providing that "liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018) (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002) (plurality op.)). This doctrine is an exception to the general rule that a person has no duty to control another person's conduct. *Id.* The Texas Supreme Court has "long recognized the employer-employee relationship" as one such relationship imputing to the employer vicarious liability for an employee's fault. *Id.* at 131. Under the doctrine, an employer can be liable for a worker's negligent acts if, at the time of the acts, the worker was (1) an employee and (2) acting in the course and scope of his employment. *Id.*

Vicarious liability is a derivative theory, meaning that an employer's liability for its employee's tortious activity depends upon the employee's liability for the underlying tort. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738 (Tex. 2020) (stating that theories of derivative or vicarious liability are "liability-spreading theories [that]

28

depend upon liability for an underlying tort, and they survive or fail alongside that tort"); *Magee v. G & H Towing Co.*, 388 S.W.3d 711, 714 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that "an employer cannot be vicariously liable in tort when its agent or employee has not engaged in tortious conduct"). In the context of civil conspiracy, the Texas Supreme Court has explained that vicarious liability is "a kind of cause of action" even if it is not an independent tort:

> A cause of action is simply "a factual situation that entitles one person to obtain a remedy." . . . When used as a theory of vicarious liability, civil conspiracy is part of the factual situation that permits a remedy against co-conspirators. Without it, there would be no grounds for recovery against co-conspirators who did not commit the underlying unlawful act. So it is not inconsistent to say civil conspiracy is a vicarious liability theory while also recognizing that it is a kind of cause of action. Indeed, it is not uncommon for courts to characterize vicarious liability itself as a cause of action when sorting through plaintiffs' various claims. None would take this usage to mean vicarious liability is an independent cause of action.

*Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (internal citations omitted).

Neither the Texas Supreme Court nor this Court has addressed whether vicarious liability or respondeat superior constitutes a "legal action" under the TCPA. The TCPA definition of "legal action" is "undeniably broad." *Montelongo*, 622 S.W.3d at 296 (citation and internal quotation marks omitted). This broad definition "evidences a legislative intent to treat any claim by any party on an individual and separate basis." *Judwin Props. Inc. v. Lewis*, 615 S.W.3d 338, 343

29

(Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *Better Bus. Bureau of Metro. Dallas, Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied)). Indeed, to establish vicarious liability, a plaintiff is required to prove not only the underlying tortious activity but also that the tortfeasor was an employee acting in the course and scope of his employment at the time the tortious activity occurred. *Painter*, 561 S.W.3d at 131. In this case, however, we need not resolve the issue because even if we assume that respondeat superior constitutes a separate legal action under the TCPA, we conclude that the claim was not new in the second amended petition.

*Montelongo* disapproved sole reliance on pleading standards when considering whether an amended or supplemental petition asserts a legal action within the meaning of the TCPA. 622 S.W.3d at 300. Rather, the court looked to the TCPA's language in determining that, to assert a "cause of action" within the meaning of a "legal action," "the pleading must be sufficient to enable a court to determine, with reasonable certainty, not just the facts, but 'the elements of the cause of action and the relief sought with sufficient information upon which to base a judgment.'" *Id.* at 300–01 (quoting *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979)) (alterations omitted). The issue, therefore, is whether the Sanchez parties' prior petitions are sufficient to enable the court to determine with reasonable

30

certainty the facts and elements of their theory of vicarious liability against Terra with sufficient information upon which to base a judgment. *See id.*

The Sanchez parties' prior pleadings did not use the terms "vicarious liability" or "respondeat superior." Terra argues that the prior petitions only alleged that Reynolds was working "on behalf of" Terra, which is insufficient to support a claim for vicarious liability. However, the prior petitions provided significantly more detail than this. These earlier petitions alleged that Terra was a newly created start-up company doing business as a direct competitor of the Sanchez parties, and Terra solicited Reynolds for employment and hired him as a vice president of operations. The day after accepting employment at Terra, Reynolds allegedly stole the first batch of trade secrets and other confidential information from the Sanchez parties. The prior petitions alleged that Terra "hired Reynolds to gain access to this Sanchez information."

After he was hired, Reynolds allegedly provided input to Terra's bidding and acquisition of gas assets by using the trade secrets and other information that he took from the Sanchez parties. In one instance, Terra competed against Sanchez in bidding on an asset and, although neither party won the bid, "Terra significantly enhanced Terra's bid and its odds of success [by] utilizing Sanchez's trade secret information." Terra and Reynolds allegedly used the Sanchez parties' trade secrets and other information "to identify, model, and bid on" other assets. The Sanchez

31

parties alleged that their "stolen information was a readymade template for [appellants] to successfully acquire and develop this asset, which is precisely what Terra and Reynolds used Sanchez's information to do." Finally, the prior pleadings alleged that Reynolds solicited other Sanchez employees for employment at Terra. Reynolds eventually succeeded in recruiting Hobbs and Mewshaw, and the two latter individual appellants also allegedly took the Sanchez parties' trade secrets and other confidential information with them to Terra. Each of the causes of action in the prior petitions incorporated these allegations by reference.

The prior petitions thus alleged that Terra recruited and hired the individual appellants for the purpose of taking the Sanchez parties' trade secrets and other confidential information on Terra's behalf, and appellants used the trade secrets and confidential information to benefit Terra's new business. *See Painter*, 561 S.W.3d at 131 (stating that employee acts within course and scope of employment if act is within scope of employee's general authority, in furtherance of employer's business, and for accomplishment of object for which employee was hired). These facts allege that, at the time of their allegedly tortious conduct, the individual appellants were employed by Terra and acted within the course and scope of their employment. These facts are sufficient to allege vicarious liability. *See id.* at 130.

In the misappropriation of trade secrets cause of action, for example, the Sanchez parties alleged that all appellants misappropriated trade secrets not just by

32

using and disclosing the information without the Sanchez parties' consent, but also by acquiring the information by improper means. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(3) (defining "[m]isappropriation" of trade secrets as either "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent . . . ."). This trade secret misappropriation claim is the basis for most of the Sanchez parties' other claims, including the claim that Terra knowingly participated in the individual appellants' breaches of their fiduciary duties by misappropriating trade secrets.

The prior pleadings therefore alleged that Terra was directly liable for using or disclosing the trade secrets and that Terra was vicariously liable for the individual appellants' actions in improperly acquiring, using, and disclosing the trade secrets. The prior petitions are sufficient to enable us to determine with reasonable certainty the facts and elements of the vicarious liability theory asserted against Terra with sufficient information upon which to base a judgment. *See Montelongo*, 622 S.W.3d at 300.

Terra also argues that the vicarious liability theory is based on a new essential fact—that Reynolds acted as "an officer" of Terra when he allegedly copied the Sanchez parties' trade secrets and other information. We disagree.

33

The *Kinder Morgan* court held that adding new essential facts to support previously alleged claims constitutes a new legal action that triggers a new sixty-day dismissal period under the TCPA as to the new essential facts. 622 S.W.3d at 848 (applying *Montelongo*, 622 S.W.3d at 293–94).

The second amended petition added that Reynolds acted on behalf of and as "an officer" of Terra when he allegedly stole the Sanchez parties' trade secrets and other confidential information. The earlier petitions, however, alleged that Terra hired Reynolds as a vice president and, after hiring him, Reynolds "act[ed] on behalf of" Terra when he allegedly took the trade secrets and other information from the Sanchez parties. The essential factual allegation supporting the Sanchez parties' theory of vicarious liability against Terra is that Reynolds was Terra's employee and was acting in the course and scope of his employment with Terra when he engaged in the allegedly tortious activity. *See Painter*, 561 S.W.3d at 131. Considering that Reynolds was previously identified as a Terra vice president, the additional language stating that Reynolds acted as an officer of Terra is not a new essential factual allegation. We therefore conclude that the theory of vicarious liability asserted in the second amended petition against Terra for Reynolds' actions was the same legal theory previously asserted against Terra. Therefore, the TCPA motion was untimely as to this theory.

## 5. New Theory of Concerted Action

Appellants finally contend that the second amended petition added allegations of a massive scheme between appellants to assist in the alleged misappropriation of trade secrets.[7] Specifically, appellants argue that the second amended petition added allegations that appellants "met and conversed," discussed" their plans, and were "in regular contact." They also argue that this petition added language stating that appellants had a "meeting of the minds," "were members of a combination of persons," and that the "object of the combination was to accomplish the unlawful purpose of misappropriating Sanchez's trade secrets."

Appellants argue that the prior pleadings only alleged direct liability for each appellant's tortious activity rather than "coordinated action between all [appellants] to steal trade secrets." We disagree. As discussed above, the prior pleadings alleged that the newly created Terra solicited employees from its "direct competitor," the Sanchez parties. Terra eventually hired Reynolds as a vice president and encouraged him to take the trade secrets and other confidential information from the Sanchez parties. Reynolds did so, and Terra and Reynolds used the Sanchez parties' trade secrets and other confidential information to bid on and acquire gas assets in

---

[7] Terra raised this argument in its original opening appellate brief, but it did not mention it again in its supplemental briefing upon remand from the Texas Supreme Court. Because the argument was not withdrawn, we briefly address it.

competition with Sanchez. The prior pleadings also alleged that "Reynolds began targeting and soliciting" other Sanchez employees, including Mewshaw and Hobbs. "Terra recruited Hobbs to further its scheme to misappropriate Sanchez's trade secret, confidential, and proprietary information." Like Reynolds, Mewshaw and Hobbs also allegedly misappropriated trade secrets by copying the Sanchez parties' information onto hard drives and emailing the information to themselves to use in furtherance of their new employer's business. The crux of these allegations— described as a "scheme" in the earlier pleadings—is coordinated action between Terra and the individual appellants to misappropriate trade secrets.

Thus, the additional language in the second amended petition did not constitute new essential factual allegations concerning concerted action among the appellants to misappropriate trade secrets and other confidential information from the Sanchez parties. We conclude that the Sanchez parties did not plead a new theory of concerted action in the second amended petition, and therefore the appellants' TCPA motion was untimely as to this theory.

\* \* \* \*

In sum, the amended TCPA motion was timely as to Count 6 for assisting or encouraging breaches of fiduciary duties and Count 7 for assisting and participating in breaches of fiduciary duties. The amended TCPA motion was otherwise untimely. We sustain in part and overrule in part Terra's first issue.

## C.        Merits of TCPA Dismissal Motion

In their second issue, appellants argue that the Sanchez parties did not meet their burden to establish by clear and specific evidence a prima facie case for each essential element of the challenged claims. We consider only the claims that were timely challenged: Count 6 for assisting or encouraging breaches of fiduciary duties and Count 7 for assisting and participating in breaches of fiduciary duties. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). In their third issue, appellants argue that even if the Sanchez parties established a prima facie case for each claim, appellants established two defenses to these causes of action: (1) the claims are preempted, and (2) the claims are not legally cognizable.

Counts 6 and 7 are both premised on two separate categories of underlying misconduct: misappropriation of trade secrets and Mewshaw's improper solicitation of Sanchez employees. As we discuss below, we agree with appellants that Counts 6 and 7 are preempted by the Texas Uniform Trade Secrets Act to the extent these claims are based on misappropriation of trade secrets. However, to the extent these two claims are based on Mewshaw's solicitation of employees, we conclude that the Sanchez parties met their burden to establish a prima facie case and appellants did not meet their burden to establish a defense to the claims.

### 1.    TCPA Framework

The TCPA provides a three-step decisional process to determine whether dismissal is appropriate. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *Gaskamp*, 596 S.W.3d at 469; *see also* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b)–(d). Under the first step, a movant must show by a preponderance of the evidence that the TCPA applies. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b) (requiring movant to prove by preponderance of evidence that legal action is based on, relates to, or is in response to party's exercise of right of free speech, right to petition, or right of association); *Gaskamp*, 596 S.W.3d at 469–70. The Sanchez parties do not dispute that the TCPA applies to the challenged claims. Accordingly, we assume without deciding that the TCPA applies in this case.

If the movant establishes that the TCPA applies to the challenged claims, then the burden shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Gaskamp*, 596 S.W.3d at 470; *see In re Lipsky*, 460 S.W.3d at 587 (stating that "clear" means unambiguous, sure, or free from doubt; "specific" means explicit or relating to particular named thing; and "prima facie case" is "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true") (citations omitted). If the nonmovant does not satisfy this burden, then the trial court must dismiss the claim. TEX. CIV. PRAC. &

REM. CODE § 27.005(b), (c). If the nonmovant satisfies this burden, then the burden switches back to the movant to establish "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d); *see Gaskamp*, 596 S.W.3d at 470.

## 2. Mewshaw's Alleged Solicitation of Sanchez Employees

We first consider whether the Sanchez parties established a prima facie case on Counts 6 and 7 to the extent these counts are based on Mewshaw's solicitation of Sanchez employees. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Gaskamp*, 596 S.W.3d at 470. These claims alleged that Mewshaw owed the Sanchez parties a fiduciary duty not to solicit Sanchez employees, he breached this duty, and appellants knowingly and substantially assisted, encouraged, or participated in this breach. On appeal, the individual appellants contend that no evidence shows that Mewshaw solicited employees while still employed by the Sanchez parties. We disagree.

In support of their response to the amended TCPA motion, the Sanchez parties attached an affidavit from a Sanchez employee who averred that she had conversations with Mewshaw in his office in February 2016 "while he was still employed at Sanchez." According to the employee, shortly after Terra announced a recent acquisition, Mewshaw told the employee that "he nearly had a deal finalized to leave Sanchez and join Terra and work with B.J. Reynolds." Mewshaw expressed

39

dissatisfaction with Sanchez, and "had several short conversations with me [the employee] about the possibility of joining him at Terra. I felt that Mr. Mewshaw was probing to see what my interest level was in transitioning to a completions role under him at Terra." *See Wooters*, 513 S.W.3d at 762–63 (stating that "[a]n employee has a duty to act primarily for the benefit of his employer in matters connected with his employment," and employee may not "solicit the departure of other employees while still working for his employer").

This affidavit constitutes clear and specific evidence that Mewshaw, while still employed by Sanchez, solicited Sanchez employees to leave their employment and go work for Terra. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.005(c), 27.006(a) (providing that court determining whether to dismiss under TCPA shall consider supporting and opposing affidavits); *In re Lipsky*, 460 S.W.3d at 590 (stating that "clear" means unambiguous, sure, or free from doubt; "specific" means explicit or relating to particular named thing; and "prima facie case" is "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true") (citations omitted). Because there is evidence that Mewshaw solicited employees from the Sanchez parties while still employed there, we disagree with appellants that the Sanchez parties did not establish by clear and specific evidence a prima facie case of Counts 6 and 7 to the extent they are based on Mewshaw's solicitation of employees.

40

### 3.     TUTSA Preemption

Appellants contend that dismissal under the TCPA is appropriate because they demonstrated that Counts 6 and 7 are preempted by the Texas Uniform Trade Secrets Act ("TUTSA").[8] *See* TEX. CIV. PRAC. & REM. CODE §§ 134A.001–.008. To the extent these causes of action are based on misappropriation of trade secrets—as opposed to Mewshaw's solicitation of employees—we agree that they are preempted by TUTSA. Accordingly, our analysis assumes without deciding that the Sanchez parties established a prima facie case for these causes of action to the extent they are based on misappropriation of trade secrets. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Gaskamp*, 596 S.W.3d at 470.

Whether a common law cause of action is preempted by a statutory remedy is a question of law that we review de novo. *Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 532 (Tex. App.—San Antonio 2020, pet. denied). TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.007(a). TUTSA does not preempt contractual remedies, whether or not

---

[8]     In 2017, the Texas Legislature amended several provisions of TUTSA, and the amendments became effective on September 1, 2017, and apply to an action commencing after this date. Act of May 8, 2017, 85th Leg., R.S., ch. 37, §§ 1–7, secs. 134A.002–.006, 2017 Tex. Gen. Laws 92, 92–94. This lawsuit was filed before September 1, 2017, and it is therefore governed by the pre-amendment version of the statute. *See id.* All citations to TUTSA in this opinion are to the pre-amendment version of the statute.

based upon misappropriation of trade secrets, or other civil remedies that are not based upon misappropriation of trade secrets. *Id.* § 134A.007(b)(1)–(2).

Our objective in construing TUTSA is to ascertain and give effect to the Legislature's intent as expressed in the statute's language. *Youngkin*, 546 S.W.3d at 680. We construe a statute's terms "according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Id.* (quoting *Hughes*, 246 S.W.3d at 625–26). We must consider the specific statutory language at issue and the statute as a whole. *Id.*; *In re Off. of Att'y Gen.*, 422 S.W.3d at 629. We endeavor to read the statute contextually, giving effect to every word, clause, and sentence. *In re Off. of Att'y Gen.*, 422 S.W.3d at 629.

Our sister courts have concluded that a common law claim is preempted by TUTSA when the gravamen of the claim duplicates a TUTSA claim. *Title Source*, 612 S.W.3d at 533; *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). A common law claim duplicates a TUTSA claim "if the factual basis of the common law claim, as pleaded, would not exist 'without the use of alleged trade secrets.'" *Title Source*, 612 S.W.3d at 533 (quoting *Super Starr Int'l*, 531 S.W.3d at 843). "The plain language of the preemption provision indicates that the law was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating

42

alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Super Starr Int'l*, 531 S.W.3d at 843 (quoting *Smithfield Ham & Prods. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995) (interpreting similar language in Virginia Uniform Trade Secrets Act)). TUTSA preempts only conflicting common law remedies, but it does not preempt a common law claim that addresses harm separate from the trade secret misappropriation. TEX. CIV. PRAC. & REM. CODE § 134A.007(a), (b)(2); *Title Source*, 612 S.W.3d at 533.

As discussed above, Counts 6 and 7 are primarily based on the individual appellants' misappropriation of trade secrets. These claims sound in tort and provide remedies for the underlying misconduct of misappropriation of trade secrets. Under the plain language of TUTSA, these claims conflict with civil remedies for misappropriation of a trade secret. *See* TEX. CIV. PRAC. & REM. CODE § 134A.007(a). To the extent these claims are based on misappropriation of trade secrets, the factual basis of these claims duplicates and would not exist without the improper acquisition, use, or disclosure of the Sanchez parties' trade secrets and other information. *See id.* § 134A.002(3) (defining "[m]isappropriation" to include either improper acquisition of trade secret or disclosure or use of trade secret without consent); *Title Source*, 612 S.W.3d at 533; *Super Starr Int'l*, 531 S.W.3d at 843. We

therefore conclude that TUTSA preempts these claims to the extent they are based on appellants' alleged misappropriation of trade secrets.

The Sanchez parties argue that TUTSA does not preempt these claims to the extent they are based on confidential information that does not rise to the level of trade secrets. The plain language of TUTSA preempts only "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *See* TEX. CIV. PRAC. & REM. CODE § 134A.007(a). TUTSA defines "[t]rade secret" as information that derives independent economic value from not being generally known or readily ascertainable by proper means and is the subject of reasonable efforts to maintain its secrecy. *Id.* § 134A.002(6). Under the plain language of TUTSA, therefore, confidential information is not necessarily a trade secret.

As pleaded by the Sanchez parties, however, even the confidential and proprietary information at issue in this case falls within TUTSA's definition of a trade secret. The Sanchez parties alleged that the files constituting their trade secrets and confidential and proprietary information give them "a competitive advantage for acquiring and operating oil and gas assets across the United States," and "their value is difficult to overstate," particularly to a new startup competitor business like Terra. Furthermore, the Sanchez parties alleged that they "employ[ed] various methods to protect the secrecy of [their] trade secret, proprietary, and confidential information."

44

*See id.* These allegations show that even the confidential and proprietary information at issue in this case derives independent economic value from not being generally known or readily ascertainable by proper means and is the subject of reasonable efforts to maintain its secrecy. *See id.* Therefore, even the information alleged to be confidential and proprietary falls within the statutory definition of "trade secret" and is preempted by TUTSA. *See id.*

To the extent Counts 6 and 7 are based on Mewshaw's solicitation of Sanchez employees to work at Terra, however, these claims are not preempted by TUTSA. Terra does not argue that these claims are based on misappropriation of trade secrets, and the individual appellants concede on appeal that these claims are not based on misappropriation of trade secrets. TUTSA expressly exempts from its application "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* § 134A.007(b)(2).

### 4.     Whether the Claims are Legally Cognizable

Appellants also argue that Counts 6 and 7 are not legally cognizable claims, which they assert as a valid defense to these two claims. *See id.* § 27.005(d). They further argue that to the extent the claims are legally cognizable under Texas law, they apply only to "highly dangerous, deviant, or anti-social group activity," which is not present in this case. Because the only remaining claims at issue in this

challenge are those parts of Counts 6 and 7 based on Mewshaw's solicitation of Sanchez employees, we consider only whether these claims are legally cognizable.

The assisting-or-encouraging and assisting-and-participating claims track the language in two of the three so-called concert-of-action theories of liability in section 876 of the Restatement (Second) of Torts. *See* RESTATEMENT (SECOND) OF TORTS § 876; *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996) (stating that concert-of-action theory in Restatement section 876 "impos[es] liability on a person for the conduct of another which causes harm" under certain circumstances). Relevant here, subsections (b) and (c) provide that, "for harm resulting to a third person from the tortious conduct of another, one is subject to liability if he":

> (b)    knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself; or
>
> (c)    gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

RESTATEMENT (SECOND) OF TORTS § 876(b)–(c).

Neither the Texas Supreme Court nor this Court has recognized a cause of action under section 876 or based on the liability theories presented in it. *Juhl*, 936 S.W.2d at 643 ("[W]hether such a theory of liability is recognized in Texas is an open question."); *accord Parker*, 514 S.W.3d at 224 (aiding and abetting); *see also Mark III Sys., Inc. v. Sysco Corp.*, No. 01-05-00488-CV, 2007 WL 529960, at *8

46

(Tex. App.—Houston [1st Dist.] Feb. 22, 2007, no pet.) (mem. op.) (declining to recognize cause of action for participating in and assisting with misappropriation of trade secrets). To the extent such a cause of action is viable, courts agree that the purpose of section 876 is "to deter antisocial or dangerous behavior," such as drag racing on public streets. *Juhl*, 936 S.W.2d at 644–45; *see Marshall v. Ribosome L.P.*, No. 01-18-00108-CV, 2019 WL 2041062, at *7 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.) (mem. op.).

Appellants had the burden to establish a valid defense to Counts 6 and 7 by a preponderance of the evidence. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d). Appellants have not cited any legal authority supporting their argument that it is a defense under the TCPA framework that a claim has not been previously recognized by Texas courts.

But assuming without deciding that appellants established such a defense, these two challenged claims also state a cause of action for knowing participation in breach of fiduciary duty, a claim that is cognizable under Texas law. *See Kinzbach Tool Co.*, 160 S.W.2d at 514; *Wooters*, 513 S.W.3d at 763. Both of the challenged causes of action include the essential elements of and essential factual allegations supporting a knowing-participation claim. Thus, even if the concert-of-action theories in section 876 are not recognized under Texas law, the challenged claims

still assert the legally cognizable claims for knowing participation in breach of fiduciary duty.

Moreover, we are aware of no authority limiting claims for knowing participation in breach of fiduciary duty to dangerous, deviant, or anti-social group activity. To the contrary, this Court has applied the cause of action to similar claims involving misappropriation of trade secrets. *See Wooters*, 513 S.W.3d at 762–67. Therefore, we conclude that appellants have not established that the challenged claims are not legally cognizable. We overrule appellants' second issue, and we sustain in part and overrule in part appellants' third issue.

### D. Attorney's Fees and Costs

#### 1. The Sanchez Parties' Attorney's Fees

In their fourth issue, appellants challenge the trial court's finding that their amended TCPA motion was solely intended to delay the proceeding. The order denying the amended TCPA motion found that the motion was "solely intended to delay under Section 27.009(b)" of the TCPA, and it stated that the court would "separately award court costs and reasonable attorney's fees" to the Sanchez parties under the TCPA.

Under section 27.009(b), the trial court "may award court costs and reasonable attorney's fees" to the party responding to a TCPA motion "[i]f the court finds that a motion to dismiss filed under [the TCPA] is frivolous or solely intended to

48

delay[.]" TEX. CIV. PRAC. & REM. CODE § 27.009(b). We generally review a trial court's decision to award attorney's fees for an abuse of discretion. *Keane Frac, LP v. SP Silica Sales, LLC*, 608 S.W.3d 416, 432 (Tex. App.—Houston [1st Dist.] 2020, no pet.). A trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *ADB Int., LLC v. Wallace*, 606 S.W.3d 413, 440 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

We have already determined that part of appellants' amended TCPA motion was meritorious. Although delay may have been a factor in appellants' decision to file the motion, the meritorious nature of the motion does "not support a reasonable finding that delay was the *only* factor" in filing the motion. *See Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857–58 (Tex. App.—Austin 2018, pet. denied). We therefore conclude that the trial court abused its discretion by finding that appellants filed the amended TCPA motion solely for delay. We sustain appellants' fourth issue.

### 2. Appellants' Attorney's Fees

Finally, in their fifth issue, appellants request that we remand for the trial court to consider attorney's fees under Civil Practice and Remedies Code section 27.009. Terra and the individual appellants make similar but distinct requests. Terra argues that it is entitled to fees under section 27.009 because it successfully moved for dismissal of a legal action under the TCPA, and therefore it requests that this Court

49

remand to the trial court with instructions to award Terra its statutorily mandated attorney's fees. The individual appellants simply request a remand for the trial court to consider in the first instance whether to award them attorney's fees.

The Sanchez parties do not oppose the individual appellants' request, but they argue that Terra requested "more expansive relief" in its motion for rehearing than in its original briefing. The Sanchez parties contend that Terra's original briefing only "asked this Court to remand the issue of fees so the trial court could consider, in the first instance, whether Appellants are entitled to them." The Sanchez parties further argue that the law is not settled whether the dismissal of only part of a claim under the TCPA entitles the movant to a mandatory fee award under section 27.009(a), and the issue should be resolved by the trial court. We disagree.

Section 27.009(a) provides that, "If the court orders dismissal of *a legal action* under [the TCPA], the court *shall* award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require . . . ." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1) (emphasis added). Section 27.009(a) does not condition attorney's fees on the dismissal of an entire claim, as opposed to dismissal of a "legal action" as defined by the TCPA. Consequently, we remand to the trial court for further proceedings consistent with this opinion and the requirements set forth in section 27.009(a), including but not limited to determining an award of attorney's fees. *See*

*Florez v. Olibas*, 657 S.W.3d 31, 43 (Tex. App.—El Paso 2022, pet. denied). We sustain appellants' fifth issue.

## Conclusion

We reverse the part of the trial court's order denying dismissal under the TCPA of Counts 6 and 7 in the second amended petition to the extent these causes of action are based on misappropriation of trade secrets, and we render judgment dismissing those parts of Counts 6 and 7. To the extent Counts 6 and 7 are based on Mewshaw's solicitation of Sanchez employees, however, the trial court properly denied the amended TCPA motion. We further reverse the trial court's finding that the filing of the amended TCPA motion was solely intended to delay, and we render judgment denying the Sanchez parties' request for attorney's fees under Civil Practice and Remedies Code section 27.009(b). We further reverse the trial court's implicit denial of appellants' attorney's fees under Civil Practice and Remedies Code section 27.009(a), and we remand to the trial court for further proceedings consistent with this opinion and the requirements set forth in section 27.009(a), including but not limited to determining an award of attorney's fees. We affirm the remainder of the trial court's order.

April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.

51